**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHARLES RAYMOND NOEL; JACOB
RALPH NOEL, Individually and as
Personal Representative of the
Estate of Cheryl Lynn Noel;
RAMONA SCHWEIGER, To The Use
of Matthew Noel,

        *Plaintiffs-Appellants,*

        v.

CARLOS ARTSON, Officer, Badge
No. 3836; DAVID SWEREN, Officer,
Badge #3794; MICHAEL GIDDINGS,
Officer, Badge #3305; MARK
CRUMP, Sergeant, Badge #3389;
ROBERT M. GIBBONS, Sergeant,
Badge #3904; BALTIMORE COUNTY,
MARYLAND,

        *Defendants-Appellees.*

No. 09-1562

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(1:06-cv-02069-WMN)

Argued: March 25, 2011

Decided: June 2, 2011

Before TRAXLER, Chief Judge, and WILKINSON and
WYNN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Traxler joined. Judge Wynn wrote an opinion concurring in the judgment.

---

## COUNSEL

**ARGUED**: Terrell Roberts, ROBERTS & WOOD, Riverdale, Maryland, for Appellants. Paul M. Mayhew, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees. **ON BRIEF:** John E. Beverungen, County Attorney, Adam M. Rosenblatt, Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees.

---

## OPINION

WILKINSON, Circuit Judge:

After a nine-day trial, a jury found that police officers carrying out a search warrant for narcotics did not violate the Fourth Amendment when they performed a no-knock entry into a residence and fatally shot a woman with a gun therein. The woman's family and estate now allege that a variety of instructional and other errors taint that verdict. But the charge provided a complete and accurate statement of the law and afforded plaintiffs ample latitude to argue their case. Finding no other reason for reversal, we affirm the judgment of the district court.

### I.

The unfortunate events that led to this lawsuit began when a Baltimore County police officer noticed a plastic bag with white dust in the car of Matthew Noel during an October 2004 traffic stop. Matthew, an eighteen-year-old who lived at home

with his parents Charles and Cheryl Noel, admitted to having a Percocet abuse problem. In the following months, Baltimore County Sergeant Robert Gibbons, a narcotics investigator, examined the trash left outside for pickup at the Noel residence and discovered additional drugs and drug paraphernalia. On January 19, 2005, Sgt. Gibbons successfully applied for a search warrant for the Noel home.

Sgt. Gibbons consulted with the supervisors of the Baltimore County SWAT Team and decided that a no-knock entry was appropriate. Gibbons testified that he was concerned for the safety of the SWAT officers executing the warrant, and thought that knocking and announcing their presence might put them in danger for three reasons: (1) Charles Noel had a thirty-year-old conviction for second-degree murder; (2) on December 18, 2004, shortly before the search of the Noel house, Matthew was charged with attempted first-degree murder for shooting a man in the foot at a convenience store, though the charge was eventually reduced to first-degree assault; and (3) there were guns registered to Cheryl and her other son Jacob at the Noels' address.

On January 21 around 4:30 a.m., the team of fifteen officers approached the Noels' residence. The officers breached the front door with a battering ram and then deployed a flash-bang grenade outside of the house to distract the occupants momentarily. The officers testified that as soon as they entered the house, one officer announced "Police — Search Warrant" and continued to do so as the officers proceeded upstairs and approached Charles and Cheryl's bedroom. Charles and his neighbors, however, testified that they heard the explosion from the grenade but never heard any police announcements.

Less than five seconds after the SWAT team entered the house, Officer Carlos Artson entered Charles and Cheryl Noel's bedroom. There, he testified that he found Cheryl spinning toward him holding a revolver. Officer Artson then

immediately fired two shots, hitting Cheryl in the left shoulder and the right breast. She then slumped to the floor near the foot of the bed. Artson ordered Cheryl to drop the gun several times, but even when Cheryl eventually released it, the gun remained only eight inches from her right arm.

The parties agree that Officer Artson then ordered Cheryl to move her hand away from the gun, but what happened after that order was hotly contested. Artson testified that Cheryl looked "like she's trying to make a choice, make a decision," and that she moved her hand back towards the gun. Charles, however, insisted that Cheryl never made any movement toward the gun. At that point, Officer Artson shot her in the chest. The coroner testified that Cheryl might have survived the first two shots, but could not have recovered from the third shot, which pierced her heart.

Cheryl's family brought this suit against Officer Artson and the rest of the SWAT team under 42 U.S.C. § 1983, claiming that the officers violated her Fourth Amendment rights by failing to knock and announce their presence, by executing the search warrant unreasonably, and by using excessive force. The officers moved for summary judgment. On September 6, 2007, the district court denied the officers' motion. We dismissed the officers' appeal in 2008, holding that they had waived the defense of qualified immunity by failing to raise it in their motion for summary judgment. *See Noel v. Artson*, 297 F. App'x 216 (4th Cir. 2008).

After a nine-day trial, the district court instructed the jury as follows:

> [T]he plaintiffs claim that the defendants acted unreasonably, and in violation of Cheryl Noel's constitutional rights, in the manner of the execution of the warrant. And that is by deliberately avoiding the knock-and-announce rule or procedure before entering the residence, and by subjecting Ms. Noel to

unreasonably excessive and/or deadly force after they entered. . . . So you should consider all the evidence presented in relation to the method used in executing the search warrant in reaching a decision as to whether the plaintiff has proven a violation of the Fourth Amendment rights.

And with regard to the plaintiffs' claims of loss and damages resulting from the alleged excessive and/or deadly force used against Cheryl Noel, you're instructed that a law enforcement officer may only employ that amount of force which is reasonably necessary under the particular circumstances surrounding the execution of the search warrant. Therefore, in determining whether the plaintiffs have proven a deprivation of Ms. Noel's Fourth Amendment rights, and a resulting loss or damages under this theory, you must determine whether the amount of force used against Ms. Noel exceeded that which a reasonable officer would have employed in executing a warrant under similar circumstances.

In this regard, you consider all of the attending and surrounding circumstances including the nature and severity of the crime at issue, whether Ms. Noel posed an immediate threat to the safety of any of the officers or others, and whether she was actively resisting or attempting to interfere with a lawful execution of the search warrant. The defendant, or the particular officer whose actions or omissions you are considering, need only have acted or failed to act within a range of conduct considered to be reasonable.

Reasonableness of an officer's conduct in executing a search warrant, including the use of force . . . must be judged from the perspective of a reasonable officer on the scene, and not with the 20/20 vision of

> hindsight. The test of reasonableness must allow for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving with respect to the means and amount of force that is reasonable and necessary in any particular situation.

On March 30, the jury returned a verdict for the officers on all counts, and the district court later denied the Noels' motion for a new trial. The Noels now appeal.

## II.

The case before us presents numerous assignments of error. No doubt litigants in a hotly contested jury trial become invested in their case and losers often leave convinced that only serious errors on the part of the trial court would have allowed the jury to return the verdict that it did. In this case, however, the trial was conducted more than capably and provided ample reason for an appellate court to sustain a verdict on behalf of either party.

The first set of challenges relates to the jury instructions, which we review holistically and through the prism of the abuse of discretion standard. The Supreme Court has instructed that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Henderson v. Kibbe*, 431 U.S. 145, 153 n.10 (1977). It is easy enough to pick at words, phrases, and sentences in a charge, but that overlooks the fact that the charge in its totality was what the jury heard. A jury verdict, moreover, represents a good deal of work on the part of a good many people, and the instructions undergirding that collective effort should not succumb lightly to semantic fencing. Accordingly, we simply determine "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of

the objecting party." *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987)).

The party challenging the jury instructions faces a heavy burden, for "we accord the district court much discretion" to fashion the charge. *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994). A district court will be reversed for declining to give an instruction proposed by a party only when the requested instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired" that party's ability to make its case. *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (quotation omitted).

III.

The Noels argued at trial that Officer Artson used excessive force when he shot Cheryl Noel, and in particular that the third shot was unreasonable. On appeal, their chief contention is that the district court abused its discretion by refusing to give a jury instruction that highlighted the issue of the third shot's reasonableness: "[E]ven if you decide that the initial use of force was reasonable . . . you must also consider whether the third shot was a reasonable use of force. The force used at the beginning of an encounter may not be justified even seconds later if the justification for the initial use of force has abated." The Noels argue that their instruction was correct, not covered by the district court's charge, and necessary in light of this Court's decision in *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). But the claim that the district court abused its discretion here falls flat for several reasons.

A.

For starters, the district court's charge covered the appropriate legal standard and left counsel more than enough room

to argue the facts in light of that standard. Following the pattern jury instructions, the district court submitted the case to the jury under the general rubric of reasonableness. The entire charge embodied this simple query: Did the officers act reasonably or did they not? This is indisputably the correct standard, for "*all* claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Quite aside from being a correct statement of the law, the reasonableness instruction left the attorneys ample room to argue their case. For example, counsel for the Noels offered a spirited closing argument that the justification for using deadly force on Cheryl Noel did not apply to the third shot because she was already incapacitated and no longer presented a threat. This is what good jury instructions often do—let counsel argue factually in terms of a legal standard, rather than having the judge make counsel's particularized arguments for them. This approach rightly indicates that "district judges are not required to comment on the evidence, and their refusal to single out any particular item of evidence is often a sensible approach to evenhandedness in the presentation of the law." *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1421 (4th Cir. 1991). The district court in this case successfully avoided tilting the game board to one side.

The Noels insist, however, that the absence of this third-shot instruction impaired their "ability to counter repeated suggestions that Artson was not only justified in firing at the outset of the encounter, but also that he could have kept on shooting." *Brief of Appellants* at 30. In their view, only the district court could keep the jury from accepting this contaminated account of reasonableness. But as we have explained, the trial court need not bear the burden of highlighting helpful arguments nor of marginalizing harmful ones. At trial, the adversary system remains the best disinfectant.

There were good lawyers on both sides of this case, and they both took advantage of ample opportunities to present their version of the facts to the jury. We see no reason to doubt that "the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles." *Bailey*, 94 F.3d at 156. In sum, the adversary system worked well.

B.

The Noels argue that despite the breadth of the district court's instruction and their own ability to argue the theory of their case, the district court nevertheless erred in not giving an instruction based on *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005). In their view, the "failure to give the requested instruction seriously impaired" their ability to persuade the jury, *Lighty*, 616 F.3d at 366, because the language from *Waterman* would have had more force coming from the trial judge.

This argument fails because it fundamentally misconceives the role of appellate opinions like *Waterman*. Such opinions are not jury instructions, nor are they meant to be. Rather, they articulate general principles of law that decide cases. Of course appellate opinions may guide a district judge's discretion when formulating jury instructions, or even bear upon the formation of pattern instructions. But they are by no means intended to preempt a district judge's discretion to formulate a suitable charge for a specific trial, for "courts must have the flexibility in instructions to avoid confusing or prejudicial statements that might arise from a discussion of the specific contentions in a case." *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1294-95 (4th Cir. 1995). Accordingly, we do not require district courts to parse our opinions for every possible instructional command.

Indeed, this case illustrates why appellate opinions cannot mechanically supply jury instructions, for *Waterman* dealt

with a completely different factual scenario. There, plaintiffs' decedent was attempting to flee in his car from pursuing police officers when he approached a line of vehicles slowing for a toll booth. 393 F.3d at 474. Several police officers emerged from the toll plaza on foot and stood near his car's projected path. When the fleeing vehicle accelerated toward the officers, they opened fire as the car approached them. Even after the vehicle passed them, the officers continued to fire from the side and from behind the car despite the fact that it was no longer a threat to run them over. *Id.* at 474-75. It was in that context we held that "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated." *Id.* at 481. That is a far cry from the situation confronted by Officer Artson, for the threat he faced remained in the very same room with a firearm still close at hand.

The Noels appear to have recognized that *Waterman* is inapposite to this case, for in their proposed jury instruction, they altered the language borrowed from that case. Our holding in *Waterman* was premised on the threat being "eliminated;" this term reflected the fact that in *Waterman*, the car that posed the threat to the officers had already driven past them, thus ending the officers' need to defend themselves with deadly force. The Noels' instruction, by contrast, stated that force is no longer justified "if the justification for the initial force has abated." This word choice is certainly more in keeping with the Noels' theory of the case, for at the time of the third shot, the threat posed by Cheryl Noel certainly had not been "eliminated:" she was still in the room and, according to the Noels, still alive and near her firearm. But it was not an abuse of discretion for the district judge to decline to adopt the actual language from an inapposite case, and there is certainly no error in declining to massage that language to make it friendlier to one party.

IV.

The Noels' second claim relates to a series of requested instructions governing the manner in which the officers executed the search warrant.

A.

The first manner-of-execution instruction requested by the Noels indicated that the jury should consider "whether the manner in which the officer executed the search warrant was reasonable." The requested instruction then set forth a list of factors for the jury to take into account, including "Ms. Noel's interests [in] security, the right to bear arms for her own protection, and the right not to be killed for simply defending her family." The Noels contend that such an instruction was necessary because while the district court addressed the need for the no-knock entry itself to be reasonable, it did "not address Noel's contention that the manner in which the officers executed the warrant after they crossed the threshold was unreasonable under the Fourth Amendment." *Brief of Appellants* at 36. In their view, "[c]ounsel was not free to argue that the officers' tactics in executing the warrant at night, deploying a flash bang grenade, and doing things in a way to prevent the Noels from hearing and comprehending that the police had entered the house or allowing Ms. Noel to disarm was unreasonable under the Fourth Amendment." *Reply Brief of Appellants* at 9.

This contention is without merit. The district court's instructions discussed at length the need for both the entry itself and the officers' post-entry conduct to be reasonable. After addressing reasonableness in the context of the no-knock entry, the court then instructed the jury that it "should consider all the evidence presented in relation to the method used in executing the search warrant." The court then stated that the "[r]easonableness of an officer's conduct in executing a search warrant, including the use of force . . . must be

judged from the perspective of a reasonable officer on the scene, and not with the 20/20 vision of hindsight." Reviewed in their entirety, the jury instructions made clear that the reasonableness requirement governed the search as a whole, not just one segment of it.

Again, the district court provided here a complete and accurate framework within which counsel could argue their view of the facts. This approach is particularly appropriate with respect to the Fourth Amendment's reasonableness standard, which requires a careful analysis of the "facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. As the district court noted, the Noels "were free to argue, and did strenuously argue, the numerous ways in which they believed Defendants' methods were unreasonable." JA 1206. We cannot say that the district court erred in declining to make these arguments on counsel's behalf.

### B.

Next, the Noels claim that the district court erred in not instructing the jury that Cheryl Noel "had a right to possess the gun in her home and to have it available as she deemed fit for her own protection." While the Noels assert that the failure to give this instruction impeded their argument that "the officers failed to adjust their method of entry to account for the fact that she had a right to bear arms and use a gun for her protection," *Brief of Appellants* at 37, we find this contention unconvincing.

It can hardly be maintained that the requested instruction addressed a "point in the trial so important, that failure to give the requested instruction seriously impaired" the Noels' ability to present their case to the jury. *Lighty*, 616 F.3d at 366. Cheryl Noel's right to own and use a gun was not a central issue in this case, and in any event was uncontested.

Moreover, we cannot fault the district court for declining to give a wink and a nod to the jury by singling out this piece

of evidence. We have noted that a "court is not required to comment on specific evidence in the course of giving a jury instruction, and indeed often is well-advised not to." *Hardin*, 50 F.3d at 1294. As discussed above, the district court properly submitted this case to the jury under the general rubric of reasonableness, and counsel were free to argue (and indeed did argue) that the officers failed to take Cheryl Noel's perfectly legal gun possession into account when executing the search warrant. But "[w]here, as here, the instructions accurately covered all the issues in the case, the failure to reference specific aspects of a party's contentions . . . cannot serve as a basis for a finding of error." *Id.* at 1295.

C.

Finally, the Noels challenge the district court's failure to instruct the jury that a "police officer, before using deadly force, must give a warning, if feasible, to provide a person the opportunity to recognize that it is an officer and to comply with any commands that the officer may give." But this claim falls short for the reasons that led to the rejection of the Noels' earlier assignments of error.

Excessive-force claims, like other manner-of-execution claims, "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395. "[P]roper application" of that standard "requires careful attention to the facts and circumstances of each particular case," and whether or not police have given a warning before using deadly force is one of those facts and circumstances. *Id.* at 396.

We cannot hold that the district court abused its discretion by declining to single out this additional piece of evidence. We have always left "the choice between generality versus specificity in the charge . . . to the sound discretion of the trial courts." *Hardin*, 50 F.3d at 1294-95. The court's general rea-

sonableness charge left counsel perfectly able to present the specific failure-to-warn argument to the jury by themselves.

## V.

The Noels next contend that the district court erred by allowing Dan Rose, a Baltimore County tactical training officer, to testify at trial. Officer Rose, who was Baltimore County's designated witness for the SWAT Team's training, personally trained Officer Artson. At trial, he testified to the training he provided Artson in "shoot/no-shoot scenarios" and provided a demonstration used in Artson's training meant to illustrate the so-called "reactionary gap" effect. The Noels objected to Officer Rose's testimony in general and in particular to his presentation of the reactionary gap demonstration, but the district court overruled both objections.

## A.

First, the Noels claim that the district court erred by allowing Officer Rose to give his opinion regarding the propriety of Officer Artson's use of force despite not having personal knowledge of the events in question and not being disclosed as an expert witness as required by Fed. R. Civ. P. 26(a)(2)(A). But this claim faces several difficulties.

First of all, the party challenging the district court's ruling on the admissibility of evidence faces another heavy burden. Evidentiary rulings are reviewed under the well-known abuse of discretion standard, and "we will only overturn an evidentiary ruling that is arbitrary and irrational." *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011) (quotation omitted). And here, the district court did not abuse its discretion. Officer Rose had personal knowledge of Officer Artson's training in this sort of scenario because Officer Rose had actually trained him. Indeed, the Noels acknowledge that on direct examination, "Officer Rose's testimony provided only broad training scenarios," *Brief of Appellants* at 40, scenarios that

were actually used in Officer Artson's training. The district court also repeatedly scrutinized the questioning of Officer Rose to ensure that he provided only factual testimony regarding Officer Artson's training.

The Noels nevertheless seize on a response given by Officer Rose on cross-examination to show that he offered impermissible opinion testimony. In response to a question about whether Officer Artson could have grabbed Cheryl Noel's gun after she had been shot twice, Officer Rose explained that even a shot to the heart would not incapacitate a person until thirty-to-sixty seconds later. He then stated that Officer Artson "went above and beyond and stopped during a lethal confrontation and continued to try and get her to not go for that gun. So he went above and beyond our training, sir." Even if this one response were impermissible lay opinion testimony, not grounded in Officer Rose's personal knowledge of Officer Artson's training, it was harmless in the context of the voluminous testimony offered during the course of the entire trial. Moreover, it was on cross-examination that the Noels' own counsel "invited the error and therefore it provides no basis for reversal." *United States v. Neal*, 78 F.3d 901, 904 (4th Cir. 1996). We thus cannot hold that the district court's decision to admit this testimony was "arbitrary and irrational." *Cole*, 631 F.3d at 153.

## B.

Next, the Noels assert that the district court abused its discretion by allowing Officer Rose to demonstrate the reactionary gap effect with the jury. In this demonstration, Rose asked the members of the jury to hold their hands six inches apart while he held his even farther apart, and then asked them to clap their hands together before he could clap his. Rose explained after the demonstration that "you can't, because of that reactionary gap." He further explained that in SWAT training, "this is what I teach these folks . . . if we come across someone who has a weapon that's in a low ready posi-

tion, and by the time the flick of a wrist occurs and that round is fired, it's too late."

First, the Noels contend that Officer Rose's demonstration was an impermissible lay opinion. This claim fails, however, because the demonstration was a training exercise that was actually used in Officer Artson's training. Assuming, however, that the method of its presentation through active jury participation was error, we hold that it was harmless. The precise point could have been demonstrated in a number of other ways that in fact would have been preferable to one involving participation by the jurors themselves, but the demonstration was a brief and minor part of the overall trial. Moreover, there was no risk that the jury would confuse Officer Rose's clapping demonstration with an attempt to recreate the deadly confrontation in the bedroom. To the contrary, Officer Rose offered "a mere demonstration of a physical principle," which we have recognized as unproblematic. *See Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1051 (4th Cir. 1984).

Finally, assuming arguendo that the jury's participation in the demonstration was error, we do not think that the demonstration itself posed a substantial risk of unfair prejudice under Fed. R. Evid. 403 to the plaintiffs on the grounds that it "was a deliberate effort by a witness and comrade of the officer on trial to gain favor with the jury." *Brief of Appellants* at 47. All evidence introduced at trial attempts in some way to gain the jury's favor; otherwise a party would not offer it. To be sure, Rule 403 is concerned with "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1134 (4th Cir. 1988). But evidence with an emotional valence need only be excluded if there is "a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) (quotation omitted). Here, there was no indica-

tion that Officer Rose's demonstration of his training exercise had the purpose or effect of influencing the emotions of the jury or otherwise encouraging the jury to decide on an impermissible basis. For all of the above reasons, we find that any error in allowing the jury to participate in the demonstration was harmless. *See* Fed. R. Civ. P. 61 ("[T]he court must disregard all errors and defects that do not affect any party's substantial rights.").

## VI.

Finally, the Noels contend that the district court erred by failing to voir dire potential jurors on the subject of Charles Noel's thirty-year-old conviction for second-degree murder. In their view, the murder conviction, which was one of the three justifications offered by the officers for the no-knock entry, "had a strong potential for juror bias" and "was an essential part of the trial," *Brief of Appellants* at 51, and the district court's refusal to ask questions on this topic thus deprived the Noels of their right to an impartial jury.

We are not persuaded. The Supreme Court has made clear that "the trial court retains great latitude in deciding what questions should be asked on *voir dire*." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991). And while that discretion is not infinite, "it is only a rare case in which a reviewing court will find error in the trial court's conduct." *United States v. Hsu,* 364 F.3d 192, 203 (4th Cir. 2004) (quotation omitted). The district court need only question the venire so as to provide "a reasonable assurance that prejudice would be discovered if present." *United States v. Lancaster*, 96 F.3d 734, 740 (4th Cir. 1996) (en banc) (quotation omitted).

We discern no abuse of discretion on voir dire, for Charles Noel's thirty-year-old conviction for second-degree murder played at most a minor role in this case. The trial court is not bound to ask members of the venire questions about every evidentiary tangent or by-way, *see, e.g.*, *Ham v. South Caro-*

*lina*, 409 U.S. 524, 527-28 (1973) (upholding a state trial court's refusal to ask voir dire questions regarding prejudice against beards), and "[a]bsent a showing of compelling need to propound such questions, we think the district judge clearly correct in refusing them," *Langley v. Turner's Express, Inc.*, 375 F.2d 296, 298 (4th Cir. 1967). We accordingly hold that the district court's refusal to ask questions regarding the murder conviction demonstrated "reasonable restraint" in questioning that in no way prejudiced the Noels. *Id.* at 297.

## VII.

Events at the Noel home on the evening in question took a deeply regrettable turn. But the jury tasked with weighing these sad happenings was not left in the dark. Over the course of a nine-day trial, capable attorneys on each side thrashed out the propriety of the officers' actions before the body duly constituted to assess them, and the district court properly instructed that body in terms of the applicable standard of reasonableness. Under these circumstances, we see no reason to upset the jury's conclusions. Because neither instructional defects nor any other error undermines the verdict, we affirm the judgment of the trial court.

*AFFIRMED*

WYNN, Circuit Judge, concurring in the judgment:

This Court's review of jury instructions entails a relatively simple inquiry: whether the district court's instructions, construed as a whole, accurately informed the jurors of the controlling law without misleading or confusing them. In this case, the district court was free to—and perhaps should have—instructed the jury to the effect that force used at the beginning of an encounter may not be justified later if the justification for the initial use of force has been eliminated. Nevertheless, the charge that the district court did give accurately stated the controlling law. For this reason, and because I agree

with my colleagues' analysis as to the other issues on appeal, I concur in the judgment.

## I.

In this appeal, the Noels challenge, among other things, aspects of the district court's jury instructions. "Both the decision to give (or not to give) a jury instruction and the content of an instruction are reviewed for abuse of discretion."* *United States v. Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992). Through this deferential lens, we look to "whether the district court's instructions, construed as a whole, properly informed the jury of the controlling legal principles without misleading or confusing the jury." *Hartsell v. Duplex Prods.*, 123 F.3d 766, 775 (4th Cir. 1997). Stated differently, "[s]o long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous." *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1294 (4th Cir. 1995). This simple inquiry is the heart of our review on an instruction appeal.

Given the nature of our inquiry, it is not surprising that "[d]istrict courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions." *Id.* at 1293. Accordingly, a district court "is not required to comment on specific evidence in the course of giving a jury instruction . . . ." *Id.* at 1294. "Similarly, courts must have the flexibility in instructions to avoid confusing or prejudicial statements that might arise from a discussion of the specific contentions in a case." *Id.* at 1294-95. And a district court, in its broad discretion, is free to craft instructions by looking to this Court's opinions—so long as

---

*A district court will be reversed for refusing to give a requested instruction only when the requested instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired" that party's ability to make its case. *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010) (internal quotation marks omitted).

it does so in a manner that is faithful to the language of those opinions and accurately characterizes applicable law. *Cf. Justice v. Dennis*, 793 F.2d 573, 576-78 (4th Cir. 1986), vacated on other grounds, 490 U.S. 1087 (1989).

II.

The Noels first argue that the district court erred in refusing to specifically instruct on the reasonableness of Officer Artson's third and fatal shot in light of *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005). Plaintiffs wanted the district court to instruct that:

> According to the evidence the first two shots were fired close together and the third shot was fired later. . . . [E]ven if you decide that the initial use of force was reasonable . . . you must consider whether the third shot was a reasonable use of force. The force used at the beginning of an encounter may not be justified even seconds later if the justification for the initial use of force has abated. With respect to the third shot as well, you must determine whether Mrs. Noel's response or lack of response to Officer Artson's three commands to move away from the gun justified Officer Artson's shooting her a third time.

Instead of giving the requested instruction, the district court instructed the jury that:

> a law enforcement officer may only employ that amount of force which is reasonably necessary under the particular circumstances surrounding the execution of the search warrant. Therefore, in determining whether the plaintiffs have proven a deprivation of Ms. Noel's Fourth Amendment rights, and a resulting loss or damages under this theory, you must determine whether the amount of force used against Ms. Noel exceeded that which a reasonable officer

would have employed in executing a warrant under similar circumstances.

In this regard, you consider all of the attending and surrounding circumstances including the nature and severity of the crime at issue, whether Ms. Noel posed an immediate threat to the safety of any of the officers or others, and whether she was actively resisting or attempting to interfere with a lawful execution of the search warrant. The defendant, or the particular officer whose actions or omissions you are considering, need only have acted or failed to act within a range of conduct considered to be reasonable.

The district court's instructions accurately stated the applicable law. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (outlining the reasonableness standard governing the right to be free from excessive force and noting that evaluating whether law enforcement has used excessive force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). The same cannot be said of the Noels' proposed instruction.

In *Waterman*, on which the Noels' instruction is admittedly based, this Court indicated that force must be justified throughout an encounter, stating:

To simply view all of the force employed in light of only the information possessed by the officer when he *began* to employ force would limit, for no good reason, the relevant circumstances to be considered in judging the constitutionality of the officer's actions. We therefore hold that force justified at the beginning of an encounter is not justified even sec-

onds later if the justification for the initial force has been eliminated.

*Waterman*, 393 F.3d at 481. Instead of adhering to *Waterman* and its use of the word "eliminated," the Noels' proposed instruction used the amorphous "abated." "If a [*Waterman*] instruction is given, it must be faithful to [*Waterman*]." *Justice*, 793 F.2d at 577. This alone blocks the Noels from successfully arguing that the district court abused its discretion in refusing to give their proffered instruction. *See id.*; *Lighty*, 616 F.3d at 366 (noting that a district court will be reversed for refusing to give a proffered instruction, *inter alia*, when the requested instruction was "correct").

Of course, the district court, in its broad discretion, could have altered the Noels' proposed instruction to accurately reflect the *Waterman* holding. Giving such an instruction certainly would not have constituted an abuse of discretion—and may well have been desirable. Indeed, as this Court recently stated in a Section 1983 excessive force case, "precedent suggests that it is possible to parse the sequence of events as they occur; while a totality of circumstances analysis still remains good law, if events occur in a series they may be analyzed as such." *Brockington v. Boykins*, 637 F.3d 503, 507 (4th Cir. 2011) (citing *Waterman*, 393 F.3d 471, 477).

As noted in my colleagues' opinion, the events at issue in this case took place in a sequence—even if that sequence occurred over a short span of time. Officer Artson entered the Noels' bedroom and found Cheryl Noel holding a revolver. At that point, Officer Artson immediately fired two shots. Only after at least some amount of time had passed and Cheryl Noel had dropped her weapon did Officer Artson fire the third and fatal shot. While the parties dispute whether Cheryl Noel had moved her hand back toward her gun before the third shot was fired, the shots nevertheless occurred in a sequence. Under these circumstances, the district court could—and perhaps should—have instructed the jury that force justified at

the beginning of an encounter is not justified later if the justification for the initial force has been eliminated. *Waterman*, 393 F.3d at 481. The district court's decision not to do so, however, and the accurate, if more general, instructions that the court did give did not constitute an abuse of discretion.

## III.

At the end of the day, this issue turns on neither the skill of the Noels' attorney nor the number of people who put effort into trying the Noels' case. Instead, the only relevant inquiry is whether the jury instructions pass muster. Here, they do. And while the district court was free to—and perhaps should have—given the jury a charge based on *Waterman v. Batton* to the effect that force used at the beginning of an encounter may not be justified later if the justification for the use of force has been eliminated, it was not an abuse of discretion for the district court to decline to do so. For this reason, and because I agree with my colleagues' analysis on the other issues, I concur in affirming the district court's judgment.