**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1196**

ELTON CANSLER,

        Plaintiff – Appellant,

    v.

ALAN A. HANKS,

        Defendant – Appellee,

    and

EDWIN C. ROESSLER, JR.; FAIRFAX COUNTY,

        Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:16-cv-01589-LO-TCB)

Argued: February 19, 2019               Decided: June 17, 2019

Before MOTZ, KING, and THACKER, Circuit Judges.

Affirmed by unpublished opinion. Judge King wrote the opinion, in which Judge Motz and Judge Thacker joined.

**ARGUED:** Victor M. Glasberg, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellant. Kimberly Pace Baucom, FAIRFAX COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellee. **ON BRIEF:** Maxwelle C. Sokol, VICTOR M. GLASBERG & ASSOCIATES, Alexandria, Virginia, for Appellant.

Elizabeth D. Teare, County Attorney, Karen L. Gibbons, Senior Assistant County Attorney, Robert M. Hardy, FAIRFAX COUNTY ATTORNEY'S OFFICE, Fairfax, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Plaintiff Elton Cansler initiated this litigation under 42 U.S.C. § 1983 by filing a complaint in the Eastern District of Virginia against Officer Alan A. Hanks of the Fairfax County Police Department, alleging his use of excessive force with a taser in violation of the Fourth Amendment. A jury found against Cansler and in favor of Officer Hanks, concluding that excessive force was not used. Cansler challenged the verdict by requesting judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(b). The court, however, ruled that the verdict is sufficiently supported by the evidence and denied the motion. On appeal, Cansler contends that the court erred in its Rule 50(b) ruling and also in failing to give a proposed instruction regarding taser use. As explained herein, we affirm.

I.

A.

On December 22, 2016, Cansler filed his complaint in the Eastern District of Virginia against Officer Hanks and two other defendants.[1] The complaint contains three counts, each of which emanated from the September 2015 tasing of Cansler. The first count, however, alleges the only claim pertinent to this appeal. Cansler therein alleged that Hanks used excessive force with a taser, in contravention of the Fourth Amendment.

---

[1] In addition to suing Officer Hanks, Cansler alleged claims against Fairfax County and the chief of the county's police department.

After conducting discovery, Cansler and Officer Hanks filed cross-motions for summary judgment, each of which the district court denied. By his motion, Hanks sought qualified immunity and relied on the "objective reasonableness" standard — the multi-factor analysis applicable to excessive force claims under the Supreme Court's decision in *Graham v. Connor*, 490 U.S. 386 (1989). Pursuant thereto, Hanks argued that he was entitled to qualified immunity because he had not committed a constitutional violation. Hanks also contended that, if his actions somehow contravened the Fourth Amendment, he had not violated any clearly established constitutional right.

In October, 2017, the district court denied Hanks's request for qualified immunity and ruled that genuine issues of material fact justified a trial on the excessive force claim. More specifically, the court identified factual questions concerning whether Cansler had "posed an immediate threat to the safety of Officer Hanks or others," and whether he had "actively resist[ed] arrest." *See Cansler v. Hanks*, No. 1:16-cv-01589, at 3 (E.D. Va. Oct. 25, 2017), ECF No. 114.

B.

1.

In November, 2017, the district court conducted a jury trial on Cansler's excessive force claim. Among the witnesses was Officer Hanks, who described the pertinent events of September 24, 2015.[2] Hanks was on patrol in Fairfax County when he was informed

---

[2] Under the standard of review applicable to our review of the post-trial Rule 50(b) ruling, we accept and recite the facts in the light most favorable to Hanks, as the (Continued)

by radio that a pair of sunglasses had been stolen from the counter at a local bank. As part of that notification, he was provided with a description of the suspect: African-American male wearing a grey t-shirt and a black hat with a silver rim. Because a different police officer had already responded to the bank, Hanks promptly searched an area near the bank, looking for the person described.

As he was driving near the bank, Officer Hanks identified a person — that is, Cansler — who matched the description provided. Hanks pulled his police car over where Cansler was walking with his hands in his pants pockets. Exiting his police vehicle, Hanks approached Cansler and asked him to remove his hands from his pockets. When Hanks inquired about whether Cansler knew about a missing pair of sunglasses, Cansler replied that he did. Cansler then reached into a pants pocket, produced a pair of sunglasses, and handed them to Hanks.

Officer Hanks explained that, as they spoke, Cansler again placed his hands into his pockets. As a result, Hanks instructed Cansler not to conceal his hands. Cansler complied with that request and removed his hands from his pockets, revealing the inside of his right pocket. Attached to that pocket was a metal clip, which Hanks recognized as part of a pocketknife. Upon observing the knife, Hanks grabbed Cansler's right arm and ushered him toward the police car. Hanks applied force to Cansler's back, pressed him against the police car, and told him to place his hands on the hood. This physical contact

---

prevailing party at trial. *See U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017).

led to some jostling between Cansler and Hanks, with each man applying body pressure against the other. At some point, Cansler jerked an arm upward, seeking to free it from Hanks's grip.

Officer Hanks soon began to tire and decided to escalate his use of force. He pushed away from Cansler and stepped back from the police car, unholstering his taser in the process. With Hanks no longer pressed against him, Cansler turned to face the officer. Upon seeing the taser, Cansler raised his hands and turned back toward the police car. With his back to Hanks, Cansler lowered his hands to the front of his body. Hanks — believing that Cansler was about to retrieve the pocketknife — then tased Cansler in the back.

2.

The jury also heard from two witnesses who had observed the altercation. Both worked at a nearby cell phone store and had a clear view of the interactions between Hanks and Cansler. One of them, Jimmy Blanco, video recorded part of the exchange. Two versions of Blanco's video — a real-time version and a slow-motion version — were admitted into evidence.[3] The real-time video depicts a seven-second period of the altercation, starting shortly before the taser deployment and ending shortly after it. The video shows Cansler, with his back against a police car and his hands above his head, facing Hanks. Hanks is pointing his taser at the ground with his left hand. Cansler then

_____

[3] At trial, Blanco and the other cell phone store employee, Giovanni Taylor, confirmed that Blanco made the video recording and that it accurately depicted the incident.

6

lowers his hands, turns around, and places his hands on the hood of the police car. As Cansler is turning to face the vehicle, Hanks moves the unholstered taser to his right hand and aims it at Cansler's back. Hanks explained that in turning, Cansler made a series of movements indicating "that [he] was trying to hide something." *See* J.A. 213.[4] That is, Cansler hid his hands, covered his right pocket, and looked toward that pocket. The video then shows Cansler, who has his hands on the hood of the police car, turning his head back toward Hanks and collapsing, having been tased.

3.

Officer Hanks called two expert witnesses who, having reviewed the video and other evidence, confirmed the reasonableness of his actions in deploying and using the taser. Hanks's first expert, Joseph Stine, had been a police chief and an instructor on topics that included the use of tasers. According to Stine, Hanks reasonably tased Cansler based on the circumstances. As an expert on police practices and the use of force, Stine recognized that the objective appropriateness of a policeman's use of force depends on the circumstances of the situation. He emphasized that the presence of a weapon "changes the nature of [an] encounter" and can require an escalation of force. *See* J.A. 249. Stine also confirmed that "active resistance" by a suspect — such as Cansler tensing his muscles or turning around without being directed to do so — can justify a force escalation. *See id.* at 255. Stine, who viewed the video of the incident,

---

[4] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

7

stated that Cansler was at one point surrendering by raising his hands. Stine also opined, however, that the presence of the knife and Cansler's subsequent resistance — that is, turning when not instructed to do so and obscuring his hands — justified the taser deployment and usage. As Stine explained, under those circumstances, Cansler's head turn was "a threat" and Hanks's response was reasonable. *See id.* at 278.

Hanks also called Officer Travis Schaney as an expert concerning the Fairfax County Police Department's use of force training program and, in particular, the taser aspect of that program. As a certified taser instructor, Schaney explained how tasers operate and the department's general guidelines for taser usage.[5] Schaney emphasized that, in order to be armed with a taser, Fairfax County police officers had to complete an eight-hour instructional course and pass an examination containing written and practical aspects. Hanks had completed the instructional course and passed the necessary exam.[6]

## C.

At the close of the evidence, the district court conducted a charge conference and considered the contents of the jury charge. Pertinent to this appeal, the court addressed

---

[5] In addition to explaining how tasers work, Officer Schaney reviewed the proper procedures and the training given to ensure proper usage. Schaney emphasized that the increased use of tasers among police officers in recent years has resulted in a decrease in injuries to suspects and officers.

[6] During the trial, Cansler called five witnesses and presented several exhibits, seeking to counter the evidence of Officer Hanks. Among those witnesses, Cansler himself testified about the tasing incident, and an expert for Cansler opined that Hanks had used excessive force. Rejecting that evidence, the jury returned its verdict in favor of Hanks.

8

Cansler's seventh proposed instruction, entitled "§ 1983 — Use of a Taser – Degree of Force" (hereinafter "Instruction No. 7"). *See* J.A. 46. That instruction provided in full:

> Deploying a [t]aser is a serious use of force that is designed to inflict a painful blow. It may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk that is reasonably likely to be cured by using the [t]aser.

*See id.*

Arguing against Instruction No. 7, counsel for Officer Hanks contended that it would unfairly bolster Cansler's case. He maintained that the instruction was unnecessary in light of the other instructions to be given. That is, Instruction No. 7 was not needed because the jury had to apply the objective reasonableness standard specified in the Supreme Court's *Graham* decision, and had to assess the taser usage under the totality of the circumstances. In response, Cansler explained that Instruction No. 7 stems "from a recent Fourth Circuit case discussing the level of force that a [t]aser is." *See* J.A. 336. Cansler argued that Instruction No. 7 needed to be given because it was a binding legal principle concerning a claim of excessive force when a taser is involved.

The district court disagreed with Cansler and declined to give Instruction No. 7. As the court related, the jury had heard extensive evidence regarding the amount of force inflicted by a taser. The court stressed that the jury had on several occasions reviewed the video recording of Officer Hanks tasing Cansler. But the court acknowledged Cansler's objection and stated that his lawyer could argue to the jury that a single factor of the objective reasonableness assessment should be paramount.

9

After addressing other aspects of the jury charge, the district court returned to Instruction No. 7. The court emphasized that the rejected instruction — as well as another proposal that touched on whether Cansler had surrendered to Officer Hanks — were "subsumed" in the court's objective reasonableness instruction on excessive force. *See* J.A. 338. In particular, the court explained that an instruction would be given about "the factors that should be considered" in assessing the excessive force claim. *See id.* According to the court, Instruction No. 7 unnecessarily "highlight[ed] one fact versus another fact" and could lead the jury to improperly limit the factors that it considered. *See id.* The court again explained that it was for the lawyers — not the court — to persuade the jury as to which of the relevant factors were determinative.

The jury charge advised, inter alia, that the jury was to examine the totality of the "circumstances shown from the evidence received," as required by the objective reasonableness standard. *See* J.A. 347. The court explained that the jury "may consider" various factors, including "the threat reasonably perceived by Officer Hanks" and "whether Mr. Cansler posed an immediate threat to the safety of Officer Hanks or others." *See id.* at 347-48.[7] After extended deliberations, the jury returned its verdict in

---

[7] The district court specifically charged the jury that it had to decide whether Officer Hanks's use of force was reasonable "in light of all the evidence received." *See* J.A. 347. In relevant part, the court explained the inquiry as follows:

> You must determine the degree of force that a reasonable and prudent officer would have applied in effecting the arrest under the circumstances shown from the evidence received in this case. You should consider all of the relevant facts and circumstances leading up to the time of the use of the [t]aser that Officer Hanks reasonably believed to be true at the time of the

(Continued)

favor of Officer Hanks, finding that he had not contravened Cansler's Fourth Amendment right to be free from excessive force.

### D.

After the jury returned its verdict in favor of Officer Hanks, Cansler moved in a timely manner for judgment as a matter of law, pursuant to Rule 50(b).[8]  In supporting that motion, Cansler argued that the video recording established that he did not pose a threat to Hanks or anyone else.  Furthermore, Cansler maintained that Hanks had offered only speculation — that is, what Cansler might have been planning to do, and what he might have possessed — to justify the taser usage.  According to Cansler, the evidence was not sufficient for a reasonable jury to return a verdict in favor of Hanks.

---

use of the [t]aser.  You should consider those facts and circumstances in order to assess whether there was a need for the use of the [t]aser, and the relationship between the need for the force and the amount of force applied.

In determining whether Officer Hanks used excessive force, you may consider:  [T]he severity of the crime at issue, the extent of the injury suffered by Mr. Cansler, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by Officer Hanks, whether Mr. Cansler posed an immediate threat to the safety of Officer Hanks or others, [and] whether Mr. Cansler was actively resisting or attempting to evade arrest by flight.

*See id.* at 347-48.

[8] Cansler titled his Rule 50(b) motion as a "Motion for Judgment Notwithstanding the Verdict."  Although a prior version of Rule 50(b) used that terminology, Rule 50(b) now refers to a "renewed motion for judgment as a matter of law."  *See* Fed. R. Civ. P. 50(b); *see also Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1458 n.2 (9th Cir. 1993) (describing change in terminology).

11

The district court denied Cansler's post-trial Rule 50(b) motion and explained that there was sufficient evidence for the jury to "conclude that [Officer Hanks's] use of force was reasonable under the totality of circumstances." *See* J.A. 54. The court stated that the reasonableness of Hanks's use of force "was hotly contested at trial" and that the jury heard ample evidence on the issue. *See id.* The court reiterated that the jury had reviewed the video recording of the tasing "many times," and that the jurors also saw photo frames from that recording. *See id.* In sum, the court determined that "the jury's conclusion was reasonable based on the evidence at trial." *See id.* at 55.

## E.

Following the district court's denial of his Rule 50(b) motion and its related entry of judgment, Cansler noted his appeal.[9] Although neither party has questioned appellate jurisdiction, we have examined that question sua sponte. After conducting an appropriate analysis, we are satisfied that jurisdiction exists for this appeal, pursuant to 28 U.S.C. § 1291.[10]

---

[9] When the district court tried the first count to the jury, the court had already dismissed without prejudice the third count of the complaint. The court had also awarded summary judgment to Fairfax County and its chief of police on the second count. On appeal, Cansler does not challenge either the dismissal of the third count or the summary judgment award on the second count.

[10] In dismissing the third count of the complaint without prejudice, the district court gave Cansler leave to amend. Cansler did not amend, however, and no further action was taken on the third count. A dismissal without prejudice is not typically a final decision within the meaning of 28 U.S.C. § 1291. *See Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993). In appropriate circumstances, however, we take "a practical approach to finality." *See Williamson v. Stirling*, 912 F.3d 154, 170 (4th Cir. 2018) (citation and internal quotation marks (Continued)

We review for abuse of discretion a district court's decision "to give or refuse to give a jury instruction." *See United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009). Under that standard, a trial court errs if it declines to give an instruction that "'(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired'" a party's ability to put on his case. *See Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011) (quoting *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010)). We are obliged to "holistically" examine a claim that an instruction was improperly rejected, viewing it in context of the jury charge as given. *See id.* In short, a party challenging a trial court's decision not to give a proposed instruction "faces a heavy burden." *See id.*

We review de novo the denial of a Rule 50(b) motion for judgment as a matter of law. *See U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017). In conducting that review, we give the nonmoving party the "benefit of every legitimate inference in [his] favor." *Id.* (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). We will therefore affirm the denial of a Rule 50(b)

omitted). Under the doctrine of cumulative finality, we exercise appellate jurisdiction "where all claims as to all parties are disposed of while the appeal is pending, and where the district court could have certified the challenged order for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b)." *See id.* While this appeal was pending, Cansler filed a notice of dismissal with prejudice of the third count. In the circumstances, we possess § 1291 jurisdiction. *See Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 479 (4th Cir. 2015).

motion if there was evidence "upon which a jury could reasonably return a verdict for [the nonmoving party]." *Id.* (citation and internal quotation marks omitted). In performing our de novo review, we do not reweigh the evidence or make determinations of credibility. *See First Union Commercial Corp. v. GATX Capital Corp.*, 411 F.3d 551, 556 (4th Cir. 2005).

## III.

On appeal, Cansler contends that the district court erred in two respects. First, he maintains that the court erred in declining to give Instruction No. 7 as part of the jury charge. Second, Cansler contends that the court erred in failing to award him a Rule 50(b) post-trial judgment as a matter of law. We will now address and resolve those contentions.

## A.

## 1.

## a.

In arguing that the district court erred in declining to give Instruction No. 7, Cansler initially maintains that his proposal satisfied the first of the three elements of our examination. That is, pursuant to *Noel v. Artson* and other decisions on that three-element assessment, he insists that Instruction No. 7 was a correct statement of law. *See* 641 F.3d 580, 586 (4th Cir. 2011). He contends that Instruction No. 7 accords with, and stems from, our decision in *Yates v. Terry*, 817 F.3d 877 (4th Cir. 2016). We therein affirmed — on a summary judgment record — a denial of qualified immunity to a police

14

officer who had used a taser before being confronted by an immediate danger. Relying primarily on *Yates*, Cansler argues that, as a matter of law, a police officer must face an immediate safety risk to justifiably use a taser. Cansler therefore maintains that the court had to instruct the jury that Officer Hanks's taser use was only reasonable if he was facing an immediate safety risk. Because the jury charge identified an immediate safety risk as a *permissible* factor in assessing whether the use of a taser was reasonable — instead of as a "mandatory" requirement — Cansler contends that the charge erroneously "omitted the operative legal standard" specified in *Yates*. *See* Br. of Appellant 34.

As explained below, Cansler's contention misapprehends controlling precedent. We have never required a trial court to instruct a jury that a police officer must confront a dangerous situation in order to reasonably use a taser. And such a decree would conflict with the applicable multi-factor analysis for resolving claims of excessive force. The pertinent decisions undercut Cansler's contention and support the rejection of Instruction No. 7.

(1)

In its seminal decision in *Graham v. Connor*, the Supreme Court mandated that excessive force claims must be assessed under an "objective reasonableness" standard. *See* 490 U.S. 386, 388 (1989). Applying that standard, the finder of fact — here, the jury — must compare the degree of force a reasonable officer would have applied to the degree of force actually used. In order to determine the amount of force a reasonable police officer would have applied, the Supreme Court's multi-factor balancing analysis "requires careful attention to the facts and circumstances of each particular case." *See id.*

15

at 396. The objective reasonableness standard turns on, inter alia, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *See id.* In identifying those factors as part of its balancing analysis, the Court acknowledged that the objective reasonableness standard "is not capable of precise definition or mechanical application." *See id.* (citation and internal quotation marks omitted).

Nearly twenty years later, the Supreme Court again emphasized that its objective reasonableness standard for excessive force claims requires the use of the multi-factor balancing analysis, instead of a formalistic or rigid test. In its 2007 decision in *Scott v. Harris*, the Court rejected an effort to "prescrib[e] certain preconditions" for a police officer's use of reasonable force. *See* 550 U.S. 372, 382 (2007). Under the proposed standard repudiated in *Scott*, a suspect would have to pose "an immediate threat of serious physical harm to the officer or others" for a deadly use of force to be reasonable. *See id.* But the Court rejected that proposition and emphasized that the courts "must still slosh [their] way through the factbound morass of 'reasonableness.'" *See id.* at 383. Thus, in evaluating excessive force claims, there is no "magical on/off switch that triggers rigid preconditions" for a police officer's use of force. *See id.* at 382. Instead, as the Court explained, "all that matters is whether [an officer's] actions were reasonable." *See id.* at 383.

Although neither *Graham* nor *Scott* addressed a taser usage, those decisions control our analysis of excessive force claims, such as the one being pursued by Cansler.

16

That is, we assess an excessive force claim under *Graham*'s multi-factor balancing assessment, and we do not apply "magical on/off switch[es]" or "rigid preconditions" in evaluating the reasonableness of a use of force. *See Scott*, 550 U.S. at 382.

(2)

Against the backdrop of *Graham* and *Scott*, we have recently examined excessive force issues premised on taser usage in decisions relied on by Cansler, that is, *Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst*, 810 F.3d 892 (4th Cir. 2016) and *Yates*. In *Armstrong*, police officers repeatedly tased a mentally ill man who had not complied with their directions to unwrap himself from a stop sign. Armstrong died shortly thereafter, and his estate sued under § 1983, alleging that the tasings constituted excessive force and violated the Fourth Amendment. The district court awarded summary judgment to the officers, predicated on qualified immunity. On appeal, we applied *Graham*'s multi-factor analysis to the summary judgment record and explained "that tasers are proportional force *only* when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser." *See Armstrong*, 810 F.3d at 903. Viewing the facts in the light most favorable to Armstrong, the tasings were deemed to be prima facie unreasonable, and thus a Fourth Amendment violation. We nevertheless affirmed the qualified immunity awards made because the constitutional right was not clearly established.

A few months after *Armstrong*, we rendered our decision in *Yates*. We therein reviewed yet another summary judgment record and the denial of a qualified immunity claim of a police officer. Yates had been stopped for a minor traffic violation and failed

17

to present a valid driver's license. After ordering Yates out of his vehicle, the officer tased Yates twice, first while his hands were on the roof of his car and then again after he had fallen to the ground. Applying the *Graham* multi-factor analysis — and viewing the facts in the light most favorable to Yates — we deemed the tasings to be a prima facie use of excessive force that contravened the Fourth Amendment.

The *Yates* decision reiterated *Armstrong*'s ruling that a taser "'may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk.'" *See Yates*, 817 F.3d at 886 (quoting *Armstrong*, 810 F.3d at 909). Because Yates was pulled over for a minor infraction, was unarmed, and was not trying to flee or resist, multiple taser applications were "not objectively reasonable in light of the totality of the circumstances." *See id.* Viewing the facts in favor of Yates, we ruled that the officer's actions justified the denial of qualified immunity and warranted a trial on the merits.

b.

With that legal background in mind, we return to Cansler's contentions regarding Instruction No. 7. Cansler maintains that *Armstrong* and *Yates* required the district court to instruct the jury in accordance therewith. According to Cansler, Instruction No. 7 is the *only* correct statement of the applicable law for claims of excessive force with a taser. This contention fails for several reasons.

(1)

First, in both *Armstrong* and *Yates*, we applied the *Graham* balancing analysis to the factual predicates presented, just as the district court instructed the jury to do here.

18

*See Yates*, 817 F.3d at 886 ("Our analysis of the *Graham* factors . . . leads us to conclude that such force was not objectively reasonable in light of the totality of the circumstances in this case."); *Armstrong*, 810 F.3d at 901-06 (applying *Graham* factors and concluding that use of force was unreasonable). Unlike the factual predicate in this case, the *Armstrong* and *Yates* panels were obliged to accept the facts in favor of those plaintiffs. The jury charge in this case contained the legal standard utilized in both *Armstrong* and *Yates* — that is, the objective reasonableness standard required by the Supreme Court in *Graham* — and the factual findings were left for the jury to determine.

(2)

Second, neither *Armstrong* nor *Yates* requires a trial court to instruct on the legal conclusions reached in those decisions. In fact, neither of those decisions addressed an issue concerning jury instructions. They addressed the propriety of qualified immunity awards in summary judgment proceedings. And appellate opinions do not necessarily translate into mandated jury instructions. In *Noel v. Artson*, we rejected the contention that the trial court had erred in only charging the jury on objective reasonableness — based on *Graham* — to assess an excessive force claim. *See* 641 F.3d at 593. The *Noel* plaintiff challenged that instruction and argued that the court should have given another instruction, based on an opinion in an earlier case. The other instruction would have advised the jury that an officer's justification for using force can be abated during an altercation. We rejected that proposition, explaining that appellate "opinions are not jury instructions, nor are they meant to be." *See id.* at 588. Instead, such opinions "articulate

19

general principles of law" that "may guide a district judge's discretion when formulating jury instructions." *See id.*

As we emphasized in *Noel*, trial judges possess "'much discretion'" in crafting instructions, and our appellate decisions do not usurp their exercises of discretion. *See Noel*, 641 F.3d at 586 (quoting *Teague v. Bakker*, 35 F.3d 978, 985 (4th Cir. 1994)). We explained that judges possess the flexibility — in explaining the objective reasonableness standard applicable to excessive force claims — to charge a jury without creating the confusion that could result "'from a discussion of the specific contentions in a case.'" *See id.* at 588 (quoting *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1294-95 (4th Cir. 1995)). The *Noel* decision thus ruled that the trial court had properly charged the jury by identifying permissible factors for assessing the reasonableness of the force that was utilized. That instruction was consistent with *Graham* and left room for the lawyers to argue to the jury the specific factors they deemed determinative.

(3)

Third, the facts of this case are materially different from those underpinning *Armstrong* and *Yates*. Neither of those decisions involved an armed person who had committed a criminal offense and then fled. Armstrong was unarmed, mentally ill, and the subject of an involuntary commitment order. Yates was suspected of committing a minor infraction, was unarmed, and had complied with the officer's instructions. Those circumstances stand in stark contrast to the situation confronted by Officer Hanks. Cansler had committed a criminal offense, possessed a knife, and fled the scene. He then concealed his hands multiple times (after being instructed not to do so), and he resisted

20

Hanks's efforts to detain him. Those materially different circumstances — which relate to the objective reasonableness assessment — show that *Armstrong* and *Yates* are not controlling. *See Noel*, 641 F.3d at 588 (explaining that factually distinguishable opinions "cannot mechanically supply jury instructions").

c.

Put succinctly, neither *Armstrong* nor *Yates* established a rule for taser usage that is applicable to every situation. Although Instruction No. 7 could be a correct legal statement in limited circumstances, *Armstrong* and *Yates* do not usurp a trial judge's obligation to give a jury charge that complies with *Graham*.

2.

Assuming that Instruction No. 7 was correct, however, Cansler's appellate contention is unavailing and fails under *Noel*'s second element of instructional error. Put simply, the jury charge of the district court "substantially covered" Instruction No. 7, and the court gave a sound rationale for its exercise of discretion.

In identifying the various factors that the jury could consider, the charge explicitly included "the threat reasonably perceived by Officer Hanks" and "whether Mr. Cansler posed an immediate threat to the safety of Officer Hanks or others." *See* J.A. 348. Notwithstanding the district court's rejection of Instruction No. 7, the charge advised the jury that the presence of a safety risk is an important consideration in an assessment of objective reasonableness. And Cansler acknowledges that the jury charge was "an accurate statement of the law," based on *Graham*. *See* Br. of Appellant 39. With that admission, the court could not have abused its discretion in rejecting Instruction No. 7.

21

*See United States ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 912 F.3d 731, 739 (4th Cir. 2019) (ruling that court did not err in rejecting proposed instruction when charge substantially covered the issue); *United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009) (concluding that court properly declined requested instruction where charge accounted for the issue).

The district court carefully explained its bases for declining to give Instruction No. 7. As the court reasoned, that proposal would simply highlight "one fact versus another fact" and could lead the jury to focus exclusively on only one aspect of the evidence. *See* J.A. 338. And Cansler, unlike the tased plaintiffs in *Armstrong* and *Yates*, actually possessed a weapon — a fact that could weigh heavily in the objective reasonableness assessment. The court explained that its rejection of Instruction No. 7 did not preclude a jury argument on the issue. Indeed, the court reminded counsel that it was their prerogative to convince the jury of the factors that might be determinative. As the court emphasized, the jury charge "subsumed" the concerns addressed in Instruction No. 7 and covered those concerns in the various factors that the jury was entitled to consider. *See* J.A. 338. In these circumstances, the court's ruling was a proper exercise of the discretion reserved to trial judges with respect to jury instructions.[11]

---

[11] Because Cansler's challenge certainly fails on the second element of *Noel*'s three-element assessment, we need not consider the third element — whether the proposed instruction "dealt with some point in the trial so important" that it "seriously impaired" his case. *See Noel*, 641 F.3d at 588-89 (concluding that challenge to rejected instruction failed); *see also Passaro*, 577 F.3d at 222 (ruling instructional challenge failed on second element and not analyzing third element).

B.

Turning to Cansler's second contention of error, he maintains that the district court erred in failing to grant his Rule 50(b) motion for judgment as a matter of law. Accepting the objective reasonableness standard, Cansler argues on appeal that the evidence does not support the jury verdict in favor of Officer Hanks. According to Cansler, his actions after his "surrender gesture"— that is, placing his hands above his head as he faced Hanks — undermined any legitimate reason for Hanks to use the taser. *See* Br. of Appellant 41-42. Relying on the video recording, Cansler emphasizes that he did not reach for his pockets as he turned, that his hands were "open and empty at all times," and that he was tased only three seconds after placing his hands above his head. *See id.* at 42-43. Cansler thus argues that the justification given by Hanks does not show that his taser usage was reasonable in the circumstances.

Simply stated, the jury was entitled to return a verdict in favor of Officer Hanks. The jury repeatedly viewed the video, which showed that the pertinent events were consistent with Hanks's testimony. As Hanks explained, he knew that Cansler had a knife in one of his pockets, and he repeatedly instructed Cansler to remove his hands from those pockets.[12] In that circumstance, with Cansler's repeated pocketing of his hands and Hank's inability to see Cansler's hands as he faced the police car, Hanks could reasonably fear that Cansler was retrieving the knife. And Stine — Hanks's expert

---

[12] Cansler admitted at trial that he had the knife in his pocket, and that Officer Hanks became aware of that fact during the stop. And Cansler did not deny that he had inserted his hands into his pockets during the incident.

23

witness on the use of force — confirmed that Hanks had acted reasonably in perceiving a threat and responding thereto. In short, there was ample evidence to support the jury's finding that Hanks did not use excessive force.

Although Cansler presented some evidence countering the presentation supporting Officer Hanks, the jury was entitled to reject that evidence. Put succinctly, we are not permitted to reweigh the trial evidence or assess witness credibility. In these circumstances, we must affirm the district court's denial of Cansler's Rule 50(b) motion.

IV.

Pursuant to the foregoing, we reject Cansler's contentions of error and affirm the judgment in favor of Officer Hanks.

*AFFIRMED*