UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-1994

JEFFREY GRAY, Individually, as the next best friend of and
Personal Representative of the Estate of Jarrel Gray; TANYA
THOMAS, Individually, as the next best friend of and
Personal Representative of the Estate of Jarrel Gray,

Plaintiffs - Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF FREDERICK COUNTY; CHARLES
JENKINS, Sheriff, Frederick County Sheriff's Office, in both
his official and individual capacities; RUDOLPH TORRES,
Deputy Sheriff, Frederick County Sheriff's Office, in both
his official and individual capacities; FREDERICK COUNTY,
MARYLAND,

Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   William D. Quarles, Jr., District
Judge. (1:08-cv-01380-WDQ)

Argued: October 29, 2013            Decided: January 8, 2014

Before KEENAN, WYNN, and THACKER, Circuit Judges.

Affirmed by unpublished opinion.   Judge Keenan wrote the
opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED**: Gregory L. Lattimer, LAW OFFICES OF GREGORY L. LATTIMER,
Washington, D.C., for Appellants.  Sandra Diana Lee, KARPINSKI,
COLARESI & KARP, PA, Baltimore, Maryland, for Appellees.  **ON**

**BRIEF**: Ted J. Williams, Washington, D.C., for Appellants. Daniel Karp, KARPINSKI, COLARESI & KARP, Baltimore, Maryland, for Appellees.

─────────────

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Jeffrey Gray and Tanya Thomas (collectively, the plaintiffs), who are the parents of the decedent Jarrel Gray (Gray) and the representatives of his estate, filed the complaint that is the subject of this appeal. In their complaint, the plaintiffs primarily alleged that the actions of Deputy Sheriff Rudolph Torres (Torres) leading to Gray's death violated his constitutional rights. The plaintiffs asserted that Torres' use of a taser twice during his encounter with Gray, including once after Gray had fallen to the ground, was unreasonable under the circumstances and constituted excessive force. The case was tried before a jury, which returned a verdict in Torres' favor.

On appeal, the plaintiffs argue that: (1) the district court erred in instructing the jury; (2) the jury's verdict was against the weight of the evidence; and (3) the verdict form was internally inconsistent and suggested that the jury was not unanimous in its decision. Upon our review, we affirm the district court's judgment.

I.

Although many substantive details of the events at issue were disputed at trial, we set forth the facts of this case in

3

the light most favorable to Torres, the prevailing party at trial. See King v. McMillan, 594 F.3d 301, 306 (4th Cir. 2010). The evidence showed that about 5:00 a.m. on November 18, 2007, several residents in the area of Gresham Court East in Frederick, Maryland, made emergency telephone calls reporting that people were fighting in the street. The police dispatcher informed officers by radio that there were "disorderly" individuals at that location. Torres, a deputy sheriff in the Frederick County Sheriff's Office who responded to the dispatcher's call, was not accompanied by other officers.[1]

Upon arriving at the scene, Torres observed two males, later identified as Jerame Duvall and Gray, engaged in a fistfight. Torres also observed a third male later identified as Charles Kahiga, who was standing near the fighting men, and a female later identified as Sara Ismach, who was sitting inside a vehicle parked nearby. Gray and Duvall stopped fighting as Torres parked and stepped out of his patrol car.

Duvall began walking toward Ismach's car when Torres ordered him to stop and to "[g]et on the ground." Duvall refused to comply with Torres' orders, and repeatedly used

---

[1] Although he was alone at the time of the dispatcher's call, Torres decided to respond to the call because the two officers who originally were dispatched were about fifteen minutes away from the fight scene, while Torres was relatively close to that location.

4

profane language in response to Torres' commands.  Duvall began walking toward Torres, while acting in an "enraged" manner.  In response to Duvall's advances, Torres removed his conducted energy device, commonly known as a "taser," from its holster, pointed the taser at Duvall, and again ordered Duvall to "[g]et down on the ground."  Duvall complied with this order and remained in a position on the ground where Torres could see Duvall's hands, although Duvall continued yelling at Torres during this time.[2]

Torres turned his attention to Gray, who also used profane language while refusing Torres' orders to lie down on the ground.  Gray initially was not facing Torres and had placed his hands inside his pants near the front of the waistband.  Torres did not know whether Gray possessed a weapon, but later noticed that there was a "bulge" near where Gray's hands were located inside his pants.

Torres instructed Gray to "[g]ive me your hands.  Let me see your hands.  Let me see your hands."  When Gray refused to comply with this order, Torres warned Gray repeatedly, "Let me

---

[2] At some point after Torres' arrival on the scene, but before Duvall complied with Torres' orders, Kahiga complied without incident with Torres' commands to "show his hands and get on the ground."  During this same period, Ismach complied with Torres' commands to stay inside the vehicle with her hands placed on the steering wheel.

see your hands, or I'm going to tase you."  As Gray turned to face Torres, Gray's hands still were placed inside his pants near his waistband, and he again refused Torres' command to show his hands.

At that time, Torres deployed his taser.  Its probes struck Gray, delivering an electrical current of 50,000 volts that lasted five seconds.  Gray fell forward to the ground, with his hands lodged beneath his body near his groin area.  At that time, in accord with department policy, Torres used his police radio to request the presence of a supervisory officer and emergency medical services (EMS) personnel.

Although another police officer may have arrived on the scene shortly after Torres first used his taser on Gray, Torres thought that he remained the sole officer there.  Torres observed Gray breathing and heard him coughing after he fell to the ground.  Because Torres had observed many individuals fall to the ground "face first" and still remain conscious, Torres did not think that Gray was unconscious or in medical distress.

Torres considered Gray as a continuing threat because of his earlier defiance of Torres' orders, and because Gray's hands remained underneath his body.  Torres continued to order Gray to show his hands, warning on two occasions that Torres would again discharge the taser if Gray did not comply.  When Gray's hands remained under his body, Torres activated his taser for a second

6

time, delivering another electrical current of 50,000 volts that lasted for five seconds.

After the second deployment of his taser, which occurred about 20 seconds following the initial deployment, Torres observed for the first time that additional officers had arrived on the scene. The officers placed handcuffs on Duvall and Kahiga, and later assisted Torres in pulling Gray's hands out from under his body and in placing handcuffs on him.[3] The EMS personnel who had arrived on the scene observed that Gray was unresponsive. Gray was taken by ambulance to a local hospital where he was pronounced dead about two hours later.[4]

The plaintiffs initiated a lawsuit against Torres in May 2008. In their Second Amended Complaint (the complaint), the plaintiffs asserted a claim under 42 U.S.C. § 1983. They alleged that Torres deprived Gray of his constitutional rights based on an unreasonable seizure of his person in violation of the Fourth and Fifth Amendments, and contended that Torres employed excessive force during the encounter (the excessive force claim). The plaintiffs also alleged several state law

---

[3] The officers did not find a weapon on Gray's person.

[4] The medical examiner listed Gray's cause of death as "sudden death associated with restraint and alcohol intoxication," and could not conclude with certainty whether a "medical causal relationship" existed between Torres' deployments of the taser and Gray's death.

7

claims in the complaint, including wrongful death, assault and battery, certain claims based on the Maryland Survival Act, and violations of Articles 24 and 26 of the Maryland Declaration of Rights.[5]

The case proceeded to a jury trial, during which the jury heard conflicting testimony concerning the events at issue. In several respects, Torres' testimony differed from the accounts offered by Ismach and Duvall. The jury also heard testimony from Robert F. Thomas, Jr., who qualified as an expert witness on the subject of law enforcement practices and procedures.

Thomas testified that Torres' deployment of his taser on both occasions was reasonable and consistent with established law enforcement practices. Thomas stated that Torres was faced with a "dynamic," rapidly evolving situation in which he was outnumbered by several individuals, and in which two of those persons "were profanely challenging [Torres'] authority and his issuance of commands." With regard to the initial use of the taser, Thomas concluded that Torres' conduct was reasonable

_____

[5] The plaintiffs also named as defendants the Board of County Commissioners of Frederick County (the Board) and Frederick County Sheriff Charles Jenkins. The district court entered an order bifurcating the claims raised against Torres from those raised against the Board and Jenkins, and later granted summary judgment in favor of the Board and Jenkins. The district court also denied Torres' motion for summary judgment on the excessive force claim.

because Gray had been observed fighting, had made confrontational statements toward Torres, and repeatedly had refused Torres' commands to lie down on the ground and to show his hands.

Thomas further testified that Torres' second deployment of the taser also was reasonable and consistent with good law enforcement practices. Thomas based his opinion on the fact that Gray had fallen to the ground with his hands under his torso in the vicinity of his waistband. Thomas explained that the waistband area of a suspect's clothing is known to be a "frequent hiding place or carrying place for weapons of various kinds." Accordingly, Thomas opined that it was reasonable for Torres to deploy his taser on Gray for a second time when Gray did not comply with Torres' commands to show his hands after falling to the ground.[6]

The case was submitted to the jury, which delivered a verdict in favor of Torres. In responding to questions posed on the verdict form, the jury found that: (1) Torres did not violate Gray's right to be free from the use of excessive force;

---

[6] The plaintiffs presented a witness, Andrew J. Scott, III, who also qualified as an expert in the field of police procedures and practices. In contrast to Thomas' conclusions, Scott testified that, in his view, Torres' deployment of his taser on both occasions constituted an inappropriate, excessive, and objectively unreasonable use of force.

9

(2) Torres assaulted or battered Gray under the common law, but was shielded from liability because he acted in self defense or in the defense of others;[7] and (3) the plaintiffs were not entitled to damages for any of the additional state law claims.

The plaintiffs filed a motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure, contending that the verdict was against the weight of the evidence and was irreconcilably inconsistent. The district court denied the motion, and the plaintiffs timely filed a notice of appeal.

II.

A.

The plaintiffs first argue that the district court abused its discretion in instructing the jury, because the court's instruction did not allow the jury to consider their excessive force claim in an accurate and fair manner. The plaintiffs also assert that the court erred in rejecting certain additional instructions they requested on the subject of excessive force. We disagree with the plaintiffs' arguments.

---

[7] The jury also found that Torres' assault or battery on Gray was not a proximate cause of Gray's death. The jury did not reach a verdict with respect to whether the additional state law privilege of statutory immunity shielded Torres from liability on the state law claims.

As a general matter, we review for abuse of discretion a district court's decision whether to give particular jury instructions. Noel v. Artson, 641 F.3d 580, 585 (4th Cir. 2011). A party challenging a court's choice of jury instructions "faces a heavy burden," due to the significant discretion that courts have in determining which instructions are proper and necessary. Id. at 586. A district court abuses its discretion in refusing to give a jury instruction only when the proposed instruction: (1) is a correct statement of the law; (2) is not "substantially covered" by the court's charge to the jury; and (3) relates to an issue so important that failure to give the requested instruction seriously impairs a party's ability to make its case. Id. at 586.

In the present case, the plaintiffs did not object to the district court's failure to give their proposed instructions relating to excessive force, nor did they object to the excessive force instruction that was provided to the jury. Likewise, the plaintiffs did not raise in their motion for a new trial any argument concerning the jury instructions. Because the plaintiffs failed to make an objection "on the record, stating distinctly the matter objected to and the grounds for the objection," we review for plain error the district court's decision with respect to the jury instructions. Fed. R. Civ. P.

51(c)(1), (d)(2); see Gregg v. Ham, 678 F.3d 333, 338 (4th Cir. 2012).

Under the plain error standard of review, the plaintiffs are not entitled to a new trial unless they can establish that (1) there was an instructional error; (2) that error is plain; (3) that error affected the plaintiffs' substantial rights; and (4) that error seriously affected the fairness, integrity or public reputation of the court's proceedings. Gregg, 678 F.3d at 338 (citation omitted). Upon our review of the record and the parties' arguments, we conclude that the plaintiffs cannot demonstrate such plain error.

We first discuss general principles of law relating to the subject matter of the jury instructions at issue. The Fourth Amendment guarantees persons the "right to be free from unreasonable searches and seizures, which encompasses the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." Schultz v. Braga, 455 F.3d 470, 476 (4th Cir. 2006); see Graham v. Connor, 490 U.S. 386, 395 (1989). The issue whether an officer used excessive force to effect an arrest or seizure is analyzed under an "objective reasonableness" standard that takes into account, among other factors, whether "the suspect poses an immediate threat to the safety of the officers or others." See Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 732-33 (4th Cir. 2013) (quoting

*Graham*, 490 U.S. at 396, 399). Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[8] *Graham*, 490 U.S. at 396.

An officer's decisions that were mistaken, but nevertheless were reasonable, do not "transgress constitutional bounds." *Henry v. Purnell*, 652 F.3d 524, 532 (4th Cir. 2011) (en banc). "All actions, however, whether mistaken or otherwise, are subject to an objective test." *Id.*

This objective reasonableness inquiry does not involve consideration of facts or information unavailable to the officer at the time of his actions. *Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988). Nevertheless, an officer in such circumstances is charged with having knowledge of all information "reasonably discoverable by an officer acting reasonably under the circumstances." *Id.*

The excessive force instruction (Instruction 23) given by the district court provided as follows:

_____

[8] The issue whether an officer's use of force was excessive within the meaning of Articles 24 and 26 of the Maryland Declaration of Rights is analyzed under the same standard applicable to a claim of excessive force in violation of the Fourth Amendment. See *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011) (en banc) (citing *Randall v. Peaco*, 927 A.2d 83, 89 (Md. Ct. Spec. App. 2007)).

13

The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force by law enforcement officials. . . . A law enforcement official may only employ the amount of force reasonably necessary under the circumstances. . . . .

To determine whether the defendant's acts caused [Gray] to suffer the loss of a federal right, you must determine whether the amount of force used to effect the stop was that which a reasonable officer would have employed in effecting the stop under similar circumstances. In making this determination, you may take into account such factors as the severity of the crime being investigated, whether [Gray] posed an immediate threat to the safety of the defendant or others, and whether [Gray] actively resisted the stop or attempted to evade the stop by flight. . . . If you find that the amount of force used was greater than a reasonable law enforcement officer would have employed, the plaintiff[s] will have established the claim of loss of a federal right.

The plaintiffs assert that Instruction 23 was deficient because it failed to inform the jury that the plaintiffs' claims related to each of Torres' separate deployments of the taser on Gray.[9] The plaintiffs further contend that Instruction 23 was deficient because it failed to apprise the jury that (1) "force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated," Waterman v. Batton, 393 F.3d 471, 481 (4th Cir. 2005); and (2) a suspect's noncompliance, without more, is

---

[9] The jury instructions proposed by the plaintiffs, however, did not specifically draw the jury's attention to the fact that two separate taser deployments were at issue.

14

not a basis for the use of force, Florida v. Bostick, 501 U.S. 429, 437 (1991). We disagree with the plaintiffs' arguments.

We rejected similar arguments in Noel, a case in which the plaintiff argued that the district court erred when it failed to give a jury instruction addressing the fact that the excessive force claim related to three separate gunshots fired by a police officer. 641 F.3d at 587. We held that the court's instructions, which essentially directed the jury to decide whether "the officers act[ed] reasonably or [not]," provided the jury "the appropriate legal standard and left counsel more than enough room to argue the facts in light of that standard." Id.

In the present case, the jury instruction concerning the excessive force claim similarly charged the jury with determining whether Torres' actions were reasonable, and directed the jury to consider whether a reasonable police officer would have used a similar amount of force under the circumstances presented. This instruction properly provided the jury with the governing legal standard, leaving latitude to the parties to argue whether each deployment of the taser was reasonable in light of that standard.

We also held in Noel that the district court did not abuse its discretion in declining to give a jury instruction based on Waterman, observing that appellate opinions "are not jury instructions, nor are they meant to be. Rather, they articulate

15

general principles of law that decide cases." 641 F.3d at 588. Additionally, we explained that although district courts may use appellate opinions as a guide in formulating jury instructions, courts are not required to do so because appellate opinions are not "intended to preempt a district judge's discretion to formulate a suitable charge for a specific trial." Id.

These principles discussed in Noel are equally applicable here and guide our conclusion that the district court did not abuse its discretion in omitting from the jury instructions the specific points of law discussed in Waterman and Bostick. Gray's counsel was free to include in his argument the relevant principles from those two decisions, and frame his view of the evidence based on those principles.

We further conclude that the two jury instructions proposed by the plaintiffs, relating to the criteria for determining the reasonableness of an officer's use of force and the objective nature of the "reasonableness" inquiry, were "substantially covered" by Instruction 23.[10] See Noel, 641 F.3d at 586-87. The

---

[10] An additional instruction proposed by the plaintiffs provided as follows: "It is excessive force for a police officer to strike a person who is not resisting, who is not attempting to flee and who does not pose an immediate threat to the safety of the officer or others." However, this proposed instruction was an incorrect statement of law. The instruction improperly asked the jury to decide as a factual matter whether the suspect did not resist the officer's commands and was not an immediate threat to the officer, instead of considering whether "a
(Continued)

first of these proposed instructions would have informed the jury that the "reasonableness" inquiry must be judged from the perspective of a reasonable officer on the scene taking into account the totality of the circumstances, including: the severity of the crime being investigated; whether the suspect constituted an immediate threat to the officer or others; whether the suspect was actively resisting arrest or was attempting to flee; and the time available to the officer to assess the need for the use of force. All but the last of these points were explicitly included in Instruction 23, and the plaintiffs' counsel was free to argue the time issue to the jury in contending that Torres' actions were not reasonable. Accordingly, we conclude that Instruction 23 "substantially covered" the points included in the first of the plaintiffs' proposed instructions at issue in this appeal. See id. at 586.

The second of plaintiffs' proposed instructions would have again informed the jury that the "reasonableness" inquiry is an objective test that must be judged from the perspective of an objectively reasonable officer. This instruction would have further informed the jury that the officer's intentions, whether

---

reasonable officer on the scene" would have concluded that the suspect was resisting or posed an immediate threat. See Graham, 490 U.S. at 395-96.

17

good or "evil," are not relevant to the reasonableness inquiry. We observe that Instruction 23 charged the jury with determining "whether the amount of force used to effect the stop was that which a reasonable officer would have employed," which, in our view, sufficiently informed the jury to base its decision on what an objectively reasonable officer would have done under the circumstances confronted by Torres. Accordingly, we conclude that Instruction 23 "substantially covered" the points included in the second of the plaintiffs' proposed instructions that are at issue here.[11] See id. Therefore, we hold that the plaintiffs cannot demonstrate that the district court plainly erred in instructing the jury.

B.

The plaintiffs argue that the district court abused its discretion in denying their motion for a new trial, in which they primarily argued that the jury's verdict was against the clear weight of the evidence. We disagree with the plaintiffs' argument.

---

[11] To the extent that Instruction 23 did not specifically inform the jury not to consider whether Torres had good or "evil" intentions, we conclude that such an omission did not relate to an issue so important that "failure to give the requested instruction seriously impair[ed] [the plaintiffs'] ability to make [their] case." See Noel, 614 F.3d at 586.

A district court may award a new trial under Rule 59 if the verdict "(1) is against the clear weight of the evidence; (2) is based on evidence that is false; or (3) will result in a miscarriage of justice." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 650 (4th Cir. 2002) (citation omitted). We review a court's denial of a motion for a new trial for a "clear abuse of discretion and will not reverse absent exceptional circumstances." Id. (citation omitted).

The jury's finding rejecting the plaintiffs' claim that Torres used excessive force is not against the clear weight of the evidence. The jury was entitled to accept Torres' testimony that before he first deployed the taser, Gray had placed his hands in his waistband, Torres had observed a "bulge" near where Gray's hands were lodged inside his pants, and Gray repeatedly had refused Torres' orders for Gray to show his hands. The jury also was entitled to find credible and objectively reasonable Torres' assessments that he was the sole officer on the scene,[12] that Gray was not unconscious or in medical distress after the initial use of the taser, and that Gray continued to pose a threat on the ground because his hands were positioned underneath his body near his groin area and he refused to

---

[12] We observe that the plaintiffs do not argue that Torres' perception that he was the sole officer on the scene before he used the taser was objectively unreasonable.

19

display them after repeated orders to do so. See Graham, 490 U.S. at 396-97 (explaining that the reasonableness inquiry must be viewed "from the perspective of a reasonable officer on the scene," taking into account "facts and circumstances confronting" the officer).

In determining the objective reasonableness of Torres' actions, the jury also was entitled to credit the expert testimony of Thomas regarding established law enforcement practices. In particular, the jury could have accepted Thomas' testimony that because Gray positioned his hands in a place that was a "frequent hiding place or carrying place" for weapons, it was reasonable for Torres to perceive that Gray remained a threat after he fell to the ground. Ultimately, the jury could have agreed with Thomas' conclusions, or could have reached the same conclusions on its own, that both deployments of the taser by Torres were objectively reasonable.

The plaintiffs argue, nonetheless, that the jury's verdict must be vacated because the second use of the taser occurred after Gray had fallen to the ground "face first" and was motionless. The plaintiffs contend that under those facts, as a matter of law, Gray could not have posed an imminent threat to Torres.

This argument lacks merit, however, because it improperly casts the facts in the light most favorable to the plaintiffs,

20

and requires us to disregard the fundamental principle that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene" and "in light of the facts and circumstances confronting" the officer. Graham, 490 U.S. at 396-97. Thus, the issue whether a reasonable officer presented with like facts and circumstances could conclude that Gray posed an imminent safety threat remained a factual issue for the jury to decide.

Our conclusion is not altered by the plaintiffs' reliance on our decision in Meyers. There, we held that an award of summary judgment in favor of an officer based on qualified immunity constituted error with respect to the officer's use of a taser seven times on a disarmed suspect who had fallen to the ground.[13] 713 F.3d at 733-35.

We viewed the facts in the light most favorable to the plaintiff because the plaintiff's case had been terminated by the summary judgment award. Id. at 730. In contrast to the present case, in which Torres was required to deal with three unrestrained suspects, the facts in Meyers involved four officers attempting to subdue a single individual. Id. at 728.

---

[13] In Meyers, we upheld the grant of summary judgment in the officer's favor with respect to claims relating to the officer's three deployments of his taser on Meyers while he was standing and advancing toward the officer. 713 F.3d at 732-33.

21

Moreover, the uses of the taser that we held to constitute excessive force for purposes of summary judgment occurred after the suspect had been disarmed and while three officers sat on his back.  Id.  Thus, there was no doubt that the suspect was secured and did not pose a threat to the officers after he fell to the ground.  Here, however, Torres was unsure whether Gray was armed, and Gray had not been secured after falling to the ground.

We therefore conclude that the jury's verdict was not contrary to the clear weight of the evidence.  We further conclude that the verdict did not constitute a miscarriage of justice.[14]  See Dennis, 290 F.3d at 650.  Accordingly, we hold that the district court did not abuse its discretion in denying the plaintiffs' Rule 59 motion with respect to his challenges to the sufficiency of the evidence.


C.

The plaintiffs also challenge on two additional grounds the district court's denial of their motion for a new trial.  The

---

[14] We observe that the plaintiffs' argument that the verdict constitutes a miscarriage of justice is based on their contention that the verdict is contrary to the clear weight of the evidence.  Additionally, the plaintiffs do not argue that the verdict is based on evidence that is "false."  See Dennis, 290 F.3d at 650.

22

plaintiffs contend that the court was required to grant their motion on the grounds that (1) the jury verdict was irreconcilably inconsistent; and (2) the verdict form suggested a lack of unanimity in the jury's decision. We disagree with these arguments.

Although the jury found that Torres had committed an assault or battery against Gray, and also found that Torres did not violate Gray's federal or state constitutional rights to be free from the use of excessive force, these findings were based on distinct legal concepts. Under Maryland law, an assault or battery occurs when an individual attempts or consummates an offensive contact against another without the consent of that person. See Nelson v. Carroll, 735 A.2d 1096, 1099 (Md. 1999); Continental Cas. Co. Mirabile, 449 A.2d 1176, 1183 (Md. Ct. Spec. App. 1982). The issue whether Torres' use of the taser constituted excessive force, however, entailed a different inquiry requiring the jury to consider the objective reasonableness of Torres' conduct, including whether Torres reasonably concluded that Gray posed an immediate threat to Torres' safety.[15] See Meyers, 713 F.3d at 732-33. Accordingly,

---

[15] We also observe that the jury concluded that Torres was not liable for the common law tort of assault and battery, even though his actions constituted an assault or battery, because the jury found that Torres was acting in defense of himself or others and used only "such force as was reasonably necessary."

23

there is no inconsistency between the jury's finding that Torres' use of the taser was an offensive contact that occurred without Gray's consent, but that such contact did not deprive Gray of his constitutional right to be free from the use of excessive force. Cf. French v. Hines, 957 A.2d 1000, 1037 (Md. Ct. Spec. App. 2008) ("officers are privileged to commit a battery pursuant to a lawful arrest, subject to the excessive force limitation") (citation and emphasis omitted).

We also reject the plaintiffs' argument that the jury's notation of "consensus" next to each of the answers on the verdict form suggested that the jury's verdict was not unanimous. After the jury foreperson announced the jury's findings with respect to each question on the verdict form, the district court polled the members of the jury and each juror responded individually that the verdict announced was his or her verdict. Accordingly, we conclude that the district court did not abuse its discretion in rejecting this ground of the plaintiffs' motion for a new trial.

III.

For these reasons, we affirm the district court's judgment.

AFFIRMED

24