PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4739

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

MARIA ROSALBA ALVARADO MCTAGUE; FELIX ADRIANO CHUJOY, a/k/a
Felix Chujoy Alvarado; GLADYS GEORGETTE CHUJOY, a/k/a
Gladys Johnston,

Defendants – Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg.   Michael F. Urbanski,
District Judge.    (5:14-cr-00055-MFU-1;    5:14-cr-00055-MFU-2;
5:14-cr-00055-MFU-3)

Argued: September 23, 2016          Decided: October 26, 2016

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion.  Judge Duncan wrote
the opinion, in which Judge Agee and Judge Harris joined.

**ARGUED**: Jean Barrett Hudson, OFFICE OF THE UNITED STATES
ATTORNEY, Charlottesville, Virginia, for Appellant.  Aubrey Gene
Hart, Jr., A. GENE HART, JR., PC, Harrisonburg, Virginia; Aaron
Lee Cook, AARON L. COOK, PC, Harrisonburg, Virginia, for
Appellees.   **ON BRIEF**: John P. Fishwick, Jr., United States
Attorney, Roanoke, Virginia, Heather Lynn Carlton, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Charlottesville, Virginia, for Appellant.  W. Andrew Harding, CONVY & HARDING, PLC, Harrisonburg, Virginia, for Appellee Gladys Georgette Chujoy.

_____

DUNCAN, Circuit Judge:

The government brings this interlocutory appeal from an order of the district court excluding grand jury testimony from use at trial without having found prosecutorial misconduct or bad faith in the underlying grand jury proceeding. For the reasons that follow, we vacate the order and remand for further proceedings not inconsistent with this opinion.

I.

A.

The grand jury investigation at issue here took place in October 2015, but relates back to criminal proceedings that began in 2014. On December 4, 2014, a federal grand jury indicted Maria Rosalba Alvarado McTague ("Alvarado") and Felix Chujoy ("Felix") on charges of visa fraud and various immigration violations stemming from their operation of a Peruvian restaurant in Virginia. The indictment alleged that Alvarado smuggled immigrants into the United States to work in the restaurant. It further alleged that both Alvarado and Felix employed these and other undocumented immigrants in horrendous and illegal working conditions, either paying them well below the minimum wage or requiring them to work as indentured servants to repay Alvarado for smuggling them into the United States.

After their arrest, the district court released Alvarado and Felix on bond. As a condition of release, Alvarado and Felix could not contact witnesses or alleged victims in the case.

During this time, a grand jury continued to investigate additional charges and suspects. In expectation of a superseding indictment, the parties jointly moved for a continuance. The district court granted the motion and postponed trial to June 22, 2015.

B.

On March 12, 2015, the grand jury returned a superseding indictment. The superseding indictment (1) charged Alvarado and Felix with additional labor trafficking counts, (2) added Gladys Chujoy--Felix's sister and Alvarado's daughter--as a defendant, and (3) charged all three Defendants with obstruction of justice, witness tampering, and conspiracy to witness tamper. The magistrate judge released Gladys Chujoy on bond, but revoked bond for Alvarado and Felix after finding probable cause to believe that they had violated their conditions of release. Evidence suggested that Alvarado and Felix had been contacting witnesses using other people's phones to avoid detection. Over the next several months, the government investigated these allegations by interviewing individuals whose telephone numbers appeared in witnesses' cellphone records.

4

In May 2015, as part of this investigation, the government interviewed several friends of Alvarado and the Chujoys, including Carolyn Edlind and Sheriff Donald Smith. Based on those interviews, the government subpoenaed Edlind and Smith to testify at the upcoming trial.

On June 21, 2015, due to a personal emergency, the government moved for another continuance. The district court granted the motion, finding it to be in the interest of justice. So as not to adversely affect Alvarado and Felix, it ordered them released from jail on bond. Although Alvarado was obliged to obtain new counsel, Defendants did not object to the continuance and explicitly waived any potential speedy trial objection. The district court scheduled the new trial date for October 26, 2015.

In late August 2015, counsel for an inmate at the Rockingham County Jail invited the government to interview his client about information concerning Felix. Felix had been incarcerated at the Rockingham County Jail with this inmate following his arrest on the superseding indictment. The inmate revealed that he and other inmates had given Felix their PIN numbers so that Felix could make calls from jail without detection. The government obtained recorded conversations from the jail and discovered that Felix had placed at least eleven calls from May 2015 to June 2015 using other inmates' PIN

numbers. Felix spoke with Smith on nine of those calls, and the conversations provided evidence of a witness-tampering scheme between Felix, Edlind, and Smith--information that Edlind and Smith did not disclose during their May 2015 interviews with federal law enforcement.

C.

Because this conduct took place after the superseding indictment, the United States began a new investigation of Felix regarding witness tampering and obstruction of justice. The government subpoenaed Edlind and Smith to testify when the next grand jury convened on October 6, 2015. Edlind's and Smith's testimony provided further evidence of the post-superseding indictment witness-tampering scheme. The government promptly disclosed the grand jury evidence to the district court and Defendants.

On October 20, 2015, the government presented the grand jury with additional testimony and physical evidence concerning the potential witness-tampering scheme between Felix, Edlind, and Smith. That same day, the grand jury returned a new indictment against Felix and Edlind on multiple counts, including conspiracy to witness tamper, witness tampering, and obstruction of justice. The indictment also charged Edlind with perjury and a second count of obstruction of justice for

allegedly lying during her grand jury testimony about her contact with Felix.

In response to this new information, Alvarado filed a motion for a continuance to investigate possible prosecutorial misconduct at the October 2015 grand jury proceedings. The district court granted the continuance and set a new trial date of December 1, 2015. In addition, the district court invited Defendants to file motions related to prosecutorial misconduct after reviewing the grand jury transcripts disclosed by the government.

D.

On November 13, 2015, Defendants filed a joint motion to dismiss all indictments, claiming that the government abused the October 2015 grand jury process by gathering evidence for the superseding indictment. Specifically, Defendants alleged that the government called Edlind and Smith before the grand jury for the dominant purpose of gathering additional evidence against Defendants on the superseding indictment and discovering Defendants' evidence and trial strategy. The district court denied Defendants' motion, finding that no prosecutorial misconduct occurred.

The district court nevertheless limited the government's use of October 2015 grand jury evidence at the upcoming trial on the superseding indictment. The district court concluded that

7

the government could not (1) call Edlind or Smith to testify in its case-in-chief as to any subjects covered in their October 6, 2015, grand jury testimony, nor could it (2) use their grand jury testimony for any purposes at trial--including to impeach Edlind or Smith, if Defendants called them as witnesses.

The district court based its remedy on a "unique combination of circumstances," which it found to be "fundamentally unfair." J.A. 460. First, the district court found that several lines of questioning extended beyond the new witness tampering and obstruction charges into allegations underlying the original charges. J.A. 458. Second, the district court cited "the ongoing delay" occasioned by the second continuance, sought by the government, and the third continuance, sought by Defendants. J.A. 459. It bears repeating that in addition to expressly finding that "the government's examination of Edlind and Smith did not go so far as to constitute misconduct," J.A. 455, the district court also did not hold that the government engaged in bad-faith questioning or abused the grand jury process.

The government appeals the district court's order pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291.

8

On appeal, the government argues that the district court abused its discretion by sanctioning the government without finding prosecutorial misconduct. According to the government, in the absence of such a finding, an evidentiary exclusion will never lie. Defendants counter that the district court justifiably fashioned a limited evidentiary remedy to address fundamental unfairness.

This court reviews a district court's evidentiary rulings for abuse of discretion. United States v. Hedgepeth, 418 F.3d 411, 418-19 (4th Cir. 2005). Although this standard accords deference to the district courts, it does not insulate them from review. A district court abuses its discretion when it (1) acts "arbitrarily, as if neither by rule nor discretion," (2) fails to "adequately . . . take into account judicially recognized factors constraining its exercise" of discretion, or (3) rests its decision on "erroneous factual or legal premises." James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993).

We find that the district court abused its discretion in this case. District courts have the supervisory duty to ensure that the grand jury "process is not abused or used for purposes of oppression or injustice." United States v. U.S. Dist. Court for S. Dist. of W. Va., 238 F.2d 713, 722 (4th Cir. 1956). But a district court must provide a sufficient explanation for its

9

decisions in furtherance of that duty to provide a meaningful basis for review. See Jacobson, 6 F.3d at 239–40. That is what the district court failed to do here. As we explain below, its stated reasons do not comport with our precedent or the facts of record, and its conclusion regarding "fundamental fairness" provides no legal standard by which to measure the appropriateness of the evidentiary exclusion.

We nevertheless reject the government's argument that the district court may never exclude grand jury evidence except as a sanction for prosecutorial misconduct. The absence of such a finding, however, makes it particularly incumbent upon the district court to explain both the reasoning for and the parameters of any exclusion of evidence derived from grand jury proceedings.

We begin by considering our precedent on grand jury abuse. We then consider the district court's stated reasons for the evidentiary exclusion in light of that precedent. And finally, we address the government's argument for a categorical rule.

A.

Under our precedent on grand jury abuse, this court adheres to "the universal rule" that prosecutors cannot use grand jury proceedings for the "sole or dominant purpose" of preparing for trial on an already pending indictment. United States v. Moss, 756 F.2d 329, 332 (4th Cir. 1985). For example, the government

10

may not use the grand jury to improve its case in an already pending trial by preserving witness statements, locking in a witness's testimony, pressuring potential trial witnesses to testify favorably, or otherwise employing the grand jury for pretrial discovery. See id. at 331–32 (collecting cases). In short, "once a criminal defendant has been indicted, the Government is barred from employing the grand jury for the 'sole or dominant purpose' of developing additional evidence against the defendant." United States v. Bros. Constr. Co. of Ohio, 219 F.3d 300, 314 (4th Cir. 2000)(quoting Moss, 756 F.2d at 332). A district court has discretion to take appropriate remedial action where it finds grand jury abuse in the form of an improper sole or dominant purpose. See United States v. Brinkman, 739 F.2d 977, 980 (4th Cir. 1984). Here, the district court did not find an improper sole or dominant purpose, but nevertheless determined there was a need to fashion an evidentiary remedy based on perceived fundamental unfairness.

However, to protect the grand jury's investigative function, this court has repeatedly recognized that district courts should refrain from intervening in the grand jury process absent compelling evidence of grand jury abuse. See, e.g., Moss, 756 F.2d at 331–32. Defendants alleging grand jury abuse bear the burden of rebutting the "presumption of regularity attache[d] to a grand jury's proceeding." Bros. Constr.,

11

219 F.3d at 314 (quoting Moss, 756 F.2d at 332). This presumption is further strengthened where, as here, a grand jury returns new indictments with additional charges or defendants. See Moss, 756 F.2d at 332-33. Indeed, some of our sister circuits have gone so far as to hold that the government has an automatic safe harbor when the superseding indictment adds new charges or new defendants. See, e.g., United States v. Flemmi, 245 F.3d 24, 30 (1st Cir. 2001).

Although our circuit has not applied such a per se rule, the fact that new indictments issued is a circumstance a district court should factor into its overall analysis as militating in favor of the government, not just in determining the dominant purpose of the grand jury proceeding, but also in crafting an evidentiary remedy. "The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." United States v. R. Enters., Inc., 498 U.S. 292, 297 (1991). Such an investigation requires broad and thorough examination of grand jury witnesses. United States v. Dionisio, 410 U.S. 1, 12-13 (1973).

When there is a pending indictment, grand jury witnesses often have information pertinent to both already-indicted charges and new charges. The grand jury is not required to

12

disregard the former when investigating the latter. "Lacking clairvoyance, grand juries must be allowed to investigate freely individuals suspected of involvement in crimes for which indictments have already been issued." Moss, 756 F.2d at 332. An already-indicted defendant is not insulated from a grand jury investigation into new offenses committed after the initial indictment. Id. at 331–32. A grand jury in such a situation must perform the same broad and thorough investigation required of all grand juries. See Blair v. United States, 250 U.S. 273, 282 (1919) ("As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning."). A district court has some supervisory authority over these proceedings, but it should not restrict grand jury evidence arising out of "a good-faith inquiry into charges that are not covered in the [initial] indictment." Bros. Constr., 219 F.3d at 314.

B.

In light of this precedent, we next examine the district court's proffered reasons for its exclusion of evidence remedy: (1) the scope of questions asked at the October 2015 grand jury proceeding and (2) "ongoing delay" occasioned by the second and third trial continuances. We are compelled to conclude that neither reason justifies the district court's remedy.

13

1.

Part of the perceived necessity for a remedy arose from the district court's finding that "a not-insignificant portion of the questions asked at the October grand jury session went beyond the subject of witness tampering and obstruction, and delved into information probative to the underlying charges." J.A. 458. The district court also noted that "questions asked about conversations between the witnesses and defense counsel [were] of particular concern. Because so many of the government's questions addressed issues closely intertwined with the underlying charges, including a potential trial defense, some evidentiary restriction [was] needed." J.A. 458.

The reasoning underlying the district court's observations is obscure and does not provide a basis upon which appellate review can be conducted. The opinion fails to explain the relevance of the fact that the government's questioning may have been "closely intertwined with the underlying charges" to the determination of whether the questions arose out of "a good-faith inquiry into charges that [were] not covered in the indictment." Bros. Constr., 219 F.3d at 314. Uncovering evidence against an already-indicted person does not provide ipso facto evidence that the government failed to conduct its questioning in good faith. Moss, 756 F.2d at 332. In this regard, the district court's opinion fails to explain how it

14

factored the issuance of the new indictments into its analysis of any ground for an evidentiary remedy. Again, broader lines of questioning help determine what charges are appropriate, and which suspects should be tried. R. Enters., 498 U.S. at 297. Incidental benefits alone cannot justify exclusion of grand jury evidence. See Moss, 756 F.2d at 332; United States v. (Under Seal), 714 F.2d 347, 350 (4th Cir. 1983). The district court abused its discretion when it based its evidentiary exclusion partially on the grounds that some questions "seem[ed] to stray far afield of the new allegations," J.A. 455, without providing a legal justification for so doing.[1]

2.

The district court also stated that the delay occasioned by two of the trial continuances supported its evidentiary remedy. J.A. 459–60. But like the discussion about the scope of the

---

[1] Furthermore, the district court's reliance on Brothers Construction as authority to the contrary is misplaced. Like the district court in our case, the district court in Brothers Construction limited evidentiary use of some testimony without finding prosecutorial misconduct. 219 F.3d at 313–14. However, in Brothers Construction, these evidentiary rulings were not at issue on appeal. Moreover, the district court in Brothers Construction did not explain the legal basis for its evidentiary rulings, and the only other reference to these rulings occurs in a trial transcript. J.A. 458 n.3. Likewise, that transcript also fails to offer legal justification for the district court's exclusion, noting only that the district court planned to exclude some evidence. One district court's legally unsubstantiated remedy does not justify another district court's legally unsubstantiated remedy.

15

government's questioning, we cannot discern from the district court's opinion how the government's conduct in relation to the continuances supported the district court's remedy.

The first cited continuance resulted from the government's emergency motion in June 2015. The district court noted that this continuance caused the delay that required Alvarado to obtain new counsel. However, as we have noted, Defendants were released from jail to minimize any adverse effect on them. Moreover, while the district court is responsible for balancing prejudice to defendants in granting a continuance, United States v. LaRouche, 896 F.2d 815, 823–25 (4th Cir. 1990), the district court here found that granting the continuance would be in the interest of justice. The district court must explain why a delay it found fully justified at the time, now supports an evidentiary remedy.

The district court further stated that "[i]n granting the government's motion for a continuance in June, the court did not expect that the government would undertake to develop additional evidence for use at trial." J.A. 460. This statement, too, is perplexing; how it relates to Defendants' claims of grand jury abuse is not clear. The district court did not explicitly state that the government used the October 2015 grand jury hearing to develop additional evidence for already-indicted offenses; indeed, in finding neither prosecutorial misconduct nor bad

16

faith the district court suggests to the contrary. We fail to see, and the district court fails to explain, how the government's preparation for trial otherwise has any bearing on the district court's conclusion that an evidentiary exclusion was required.

The only other motion for a continuance cited by the district court as a basis for its evidentiary remedy is Alvarado's. J.A. 459–60. To justify reliance on Alvarado's motion for a continuance to impose evidentiary sanctions on the government, the district court attributes the impetus for the motion to the October 2015 indictment. This rationale fails for the same reason that the government's motion for a continuance does: the district court does not explain how the government engaged in anything other than a good-faith inquiry into new charges. Citing the indictment alone for evidence of grand jury abuse directly contradicts our prior holding that an indictment provides strong evidence of a proper purpose. See Moss, 756 F.2d at 332–33.

In the absence of a tenable explanation we are left to infer that the district court perceived a pattern of questionable behavior on the part of the government motivating the delay. However, the district court did not explicitly detail such a finding, or for that matter specify what government conduct was impermissible. This court will not read

17

between the lines to affirm an order that affects the independence accorded to the grand jury's investigative process. If new evidence came to the district court's attention that prosecutorial misconduct or bad faith contributed to the circumstances causing either continuance, then the district court must state so in its opinion. See In re Grand Jury Subpoena, 175 F.3d 332, 337–38 (4th Cir. 1999)(finding that timing of events could be one factor a district court considers in deciding whether sufficient prosecutorial misconduct exists to justify quashing a grand jury subpoena). The district court abused its discretion in citing delay as a justification for its remedy without explaining how the delay related to alleged grand jury abuse and why a remedy of evidentiary exclusion was appropriate.

C.

On appeal the government not only argues that the district court lacked a justification for its remedy, but also takes the further step of urging us to hold that a district court has no power to issue a remedy when it finds a proper dominant purpose. Although the Fourth Circuit has not squarely confronted the issue, at least one other circuit has taken such a stance. See United States v. US Infrastructure, Inc., 576 F.3d 1195, 1215 (11th Cir. 2009) (rejecting the defendants' claims of grand jury abuse "[b]ecause the government did not use the grand jury

18

'primarily' to obtain evidence" related to prior indictments where most of the questioning related to new charges).

We nevertheless decline to adopt the government's position. Our precedent "forbids" the government from engaging in impermissible questioning during a grand jury proceeding. See In re Grand Jury Proceedings No. 92-4, 42 F.3d 876, 878 (4th Cir. 1994) ("This prohibition bars, inter alia, grand jury requests that amount to civil or criminal discovery, as well as arbitrary, malicious, or harassing inquiries." (internal citation omitted)). We are not prepared to say that there could be no circumstances in which the government has undertaken a line of questioning that falls just short of impermissibility but nevertheless calls for some remedial action. See id.; see also United States v. Doe, 455 F.2d 1270, 1276 (1st Cir. 1972). District courts must be vested with some discretion to remedy conduct they find troubling even if the conduct does not rise to the level of misconduct. A defendant claiming grand jury abuse faces an uphill climb, but this court will not render the hill insurmountable.

It is simply that, on these facts, the district court has provided us with no navigational aids. Where the district court cannot conclude the government employed the grand jury for an improper sole or dominant purpose, it becomes even more incumbent upon the district court to state with particularity

19

what it found troubling, and how it tailored its remedy to correct that finding. Otherwise such exclusions risk chilling proper uses of the grand jury.

The instant case presents an apt example. The nature of questioning for a grand jury investigating obstruction of justice or witness tampering will necessarily require some inquiry into the facts of the underlying, ongoing case. As the district court itself recognized, "questions that touched on Edlind's and Smith's prior contact with Alvarado, [Felix] Chujoy, and [Gladys] Chujoy have a credible relationship with the new allegations of witness tampering." J.A. 455. It is for this reason that the district court found that Defendants had not met their heavy burden of demonstrating "that the government questioned Edlind or Smith with the sole or dominant purpose of preparing for trial on the superseding indictment." J.A. 457. The record supported this conclusion.

Yet the district court continued, finding it "necessary to fashion an appropriate evidentiary remedy." J.A. 457. But to fashion an appropriate remedy the district court must identify with specificity what troubling circumstances justified its evidentiary exclusion, and how it narrowly tailored that exclusion to prevent sweeping up evidence that arose from good-faith questioning. Holding otherwise would disregard the principle that "the law presumes, absent a strong showing to the

20

contrary, that a grand jury acts within the legitimate scope of its authority." R. Enters., 498 U.S. at 300.

## III.

What undergirds our decision today is the presumption of regularity attached to grand jury proceedings. In cases like the present one, the fact that a challenged grand jury proceeding returns new indictments renders this presumption even stronger. This court will not affirm an order overriding that presumption on the basis of mere concerns divorced from any recognized legal justification.

Therefore, we hold that the district court abused its discretion. On remand, the district court should allow the government to use Edlind's and Smith's grand jury testimony or explain with specificity both the legal basis for its exclusion, and how its sanction is narrowly tailored to that concern. For the reasons stated above, we vacate the order and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED