**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4404**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CHARLES W. PARKER, JR.,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge.  (8:13-cr-00681-RWT-1)

Submitted:  December 6, 2017                        Decided:  January 11, 2018

Before MOTZ, DUNCAN, and THACKER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Motz and Judge Thacker joined.

Nancy S. Forster, FORSTER, JOHNSON & LECOMPTE, Baltimore, Maryland, for Appellant.  David A. Hubbert, Acting Assistant Attorney General, S. Robert Lyons, Chief, Criminal Appeals & Tax Enforcement Policy Section, Gregory Victor Davis, Katie Bagley, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

A jury convicted Charles Parker, Jr., of conspiring to file false tax returns, in violation of 18 U.S.C. § 371, and presenting false claims to the Internal Revenue Service (the "IRS"), in violation of 18 U.S.C. § 287. Parker raises several challenges to his conviction and one challenge to his sentence. Parker contends that the court erred in granting the government's motion in limine to exclude documents evidencing IRS internal procedures, infringing his right to testify, providing an improper jury instruction, and denying his motion for a mistrial. Finally, Parker challenges the application of a leadership enhancement to his sentence. Finding no reversible error, we affirm.

I.

We first describe Parker's conduct leading to the charges then set forth the parts of the trial and sentencing relevant to his appeal.

A.

Parker hired Certified Public Accountant (CPA) James Newby to prepare his federal income tax returns for 2004–2008. In 2008, Newby informed Parker that he owed federal income taxes for the 2007 tax year. Instead of filing the return prepared by Newby, however, Parker paid another preparer, Harry Williams, $7,500 in cash to prepare a second tax return. This second return used fictitious Forms 1099-OID reporting

2

over $400,000 in both false income and false withholding to generate a large refund.[1] The IRS issued Parker a $283,875 refund. The IRS soon discovered the fraud. It sent a letter demanding repayment from Parker and executed a search warrant for Williams's home. J.A. 292–299.

With Williams under investigation, Parker sought out another preparer, Penny Jones. Parker paid Jones $750 per return. Jones helped Parker prepare a fraudulent tax return for 2008 as well as amended returns for three prior years using false Forms 1099-OID to inflate Parker's income and withholding and claim large refunds.

Parker also referred four acquaintances, Elan Garner, Troy Madoo, Kerry Robinson, and Perpetual Iriele, to Jones to have her prepare fraudulent tax-returns for them. These acquaintances sent Parker their financial information, and Parker forwarded this information to Jones. Parker paid Jones to prepare fraudulent returns for each person using fictitious Forms 1099-OID.

For example, Robinson and Iriele, who were married, filed a joint return in which they claimed a $1.5 million refund. After signing their return, they sent it to Parker, who attached fraudulent Forms 1099-OID prepared by Jones and sent the completed return to the IRS. During processing, the IRS corrected a math error on the return and issued Robinson and Iriele a $1.7 million refund, from which Robinson and Iriele paid Parker

---

[1] Form 1099-OID reports income derived from discounted bonds or notes. That is, it is used to report the difference between "the price of which a financial instrument is issued and its stated redemption price at maturity." Testimony of IRS Special Agent Shauna Henline J.A. 272.

3

$182,370. Jones then warned Robinson and Iriele, through Parker, to move all assets out of their names. In all, Parker submitted five false returns in his name and helped four others file nine additional false returns. Based on these returns the IRS paid approximately $2 million in refunds.

A grand jury charged Parker with one count of conspiring to defraud the United States and six counts of presenting false tax returns to the IRS. Parker proceeded to trial on all counts.

## B.

At trial, the district court granted the government's motion in limine to exclude an IRS field manual and refund form, which outlined procedures for processing refunds of more than $1 million. Parker proffered that he planned to use both documents to cross-examine an IRS manager on the specific procedures used to process the Robinson and Iriele return. Parker argued that the documents were relevant to the intent element of the conspiracy charge: if an IRS agent could not identify the return as fraudulent, "[h]ow is a layperson [who] . . . does not work for the I.R.S., is not a tax accountant, is not a preparer" to know a return is fraudulent? J.A. 316.

In support of its motion in limine, the government argued that the IRS's procedural documents were "absolutely irrelevant to the defendant's knowledge of whether he was committing crimes" and that Parker's aim was to "smear the I.R.S. and distract from the point of whether the defendant knew that what he was doing was in fact criminal." J.A. 313–14. Furthermore, the government explained that Parker did not

4

know the IRS procedures at the time of the fraud, and thus information about "how many people at the I.R.S. looked at the refund before it was cut has nothing to do with the defendant because the defendant had no idea that was the case." J.A. 321.

The district court granted the government's motion, explaining that the fact that "a whole bunch of people looked at [the Robinson and Iriele tax return] and didn't figure out that it was fraudulent . . . [was] not relevant to [Parker's] intent." J.A. 324. After all, "contributory negligence" on the part of the IRS is not a defense to tax fraud. J.A. 313. The court asked, "Are we putting the I.R.S. on trial or your client on trial?" J.A. 317. The record shows that entry-level processors in the Revenue Accounting department who used this field manual and refund form only evaluated returns for accuracy and completeness, not for fraud. *See* J.A. 393, 420 (testimony of Shauna Henline, explaining that these processors were "entry level people," "were only reviewing the 1099-OIDs that were attached," and "rely on the honesty of the taxpayers"). However, Parker was permitted to elicit information from an IRS witness about other details of the reviewers' procedure related to Robinson and Iriele's return, including that the refund would have been processed manually and received "special attention." J.A. 417–18.

Newby testified for the government at trial. During his cross-examination, Parker attempted to have Newby concede that tax filers rely on the advice of the tax preparer in preparing their tax return. J.A. 775–76. However, Newby did not agree with the premise of Parker's questions. When asked by Parker about whether a client relies on a tax preparer, Newby responded:

5

A: We have a 2007 tax return from Mr. Parker that showed one amount and then another 2007 [return]. Why couldn't he just come back to me and say, listen, I've got some information you might not be aware of?
. . .
A: This was my concern to begin with . . . .

J.A. 776; Parker moved for a mistrial, contending that Newby was "giving opinions, characterizing what [he] filed [as] foolish."[2] J.A. 776. The court denied the motion for a mistrial, but instructed the jury to disregard Newby's statement and instructed Newby to not provide opinions. J.A. 776–77.

Undeterred, Parker again continued with his line of questioning. *See* J.A. 781–82, 789–90. Unsurprisingly, Newby again did not agree with the questions asked by counsel, as highlighted by this exchange:

Q: And you don't know what other judgments a different tax preparer who signed her name or put her name on a tax return, you can't tell this jury what judgments were made by another tax preparer who prepared Mr. Parker's tax returns. Correct, Mr. Newby?
A: That's incorrect.
Q: What? You--
A: I can surmise from the 2007 return that I prepared and the 2007 return that I saw somebody else prepare, something is amiss.
Q: Right. But it's the tax preparer [who] would be amiss. That the tax preparer is the person who prepared the tax return. Correct?
. . .
A: Something has to be amiss to go from owing $1,700 to getting a refund of $399,000.

---

[2] During direct examination, Newby indicated that the fact that a tax preparer did not sign a return may indicate some "hanky panky" or "foolishness," because the preparer did not want to put his or her name on the return. Parker objected and was overruled. J.A. 729–730.

Q: And the person [who] would be amiss or to use your phrase earlier, hanky-panky, would be the person who prepared the tax return. Correct?

A: Everybody knows how much income they've earned and everybody knows you do not get a refund that's five times more than your income.

Q: Everybody knows that?

A: That is right. And to me, personally, that's how I feel and I'm offended that you think I wouldn't know the difference. Because common sense is the purest form of intelligence. You cannot come in my office and expect to get a refund five to ten thousand dollars more than you made. You can't do it. It's not done without hanky-panky. And I'll stand on that.

J.A. 790–91. Parker again moved for a mistrial, objecting to Newby expressing an opinion on the stand. J.A. 791–92. The court noted that Parker had been aggressively questioning Newby, and that "when you push him real hard, at some point he's going to argue back at you." J.A. 792. The court further remarked that there was no evidentiary basis for the inference that Parker was attempting to get Newby to make, and that "he's not going to say that for you." J.A. 792–93. The court denied the motion. J.A. 793.

Near the end of trial, Parker's attorney informed the district court that Parker would not testify. The court questioned Parker on his understanding of his constitutional rights: "You have a constitutional right to remain silent and not to testify . . . [but also] the absolute right to take the stand [on] your own behalf and give your side of the story in whatever way you want." J.A. 892. The court then added:

Do you understand also if you were to testify falsely and you were ultimately found guilty, the fact that you testified falsely potentially could result in an increase in the range of sentence that the advisory guidelines would recommend. I am not bound by these guidelines. But if you were to testify falsely, that potentially could result in an increase in your offense level, if you were to be found guilty.

7

J.A. 893. Parker confirmed that he understood, and Parker's attorney did not object.

After the government rested, the district court gave the jury the following willful blindness instruction:

> If you find that the defendant was aware of a high probability that the tax returns at issue were false and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually believed that the tax returns at issue were true, he may not be convicted.

J.A. 951. Parker objected to this instruction arguing that he could not be willfully blind to a conspiracy. J.A. 853. Parker also requested that the jury be instructed on multiple conspiracies; one involving just Williams and Parker and one involving Jones, Parker, and the other individuals for which Jones prepared tax returns. The government responded by clarifying that Williams was not listed on the conspiracy charge and that there was only one conspiracy involving Parker, Jones, and all of the other people involved with the pair. The district court agreed with the government and rejected Parker's request noting that the "overall conspiracy was to conspire to use these bogus 1099-OID forms to prepare multiple fraudulent tax returns to obtain unwarranted refunds." J.A. 865. The jury subsequently found Parker guilty on all counts.

## C.

The probation officer prepared a presentence report and applied a 4-level leadership enhancement pursuant to the United States Sentencing Guidelines (the "Guidelines") § 3B1.1(a) because Parker recruited accomplices into the conspiracy,

8

secured Jones as the tax preparer, and provided her instructions on how to prepare the fraudulent returns. Parker objected to the application of the leadership enhancement.

At sentencing, the district court overruled Parker's objections to the Guidelines calculations. J.A. 1104–08. In addressing the leadership enhancement, the court first noted that the evidence at trial established that the conspiracy had five or more participants. J.A. 1106. The court found that while "other people may have been very culpable," their culpability did not alter the fact that Parker "was in the thick of recruiting people to be participants in a fraudulent tax return scheme." J.A. 1107. The court further noted that Parker supervised Jones' preparations of the returns for Madoo, Garner, Robinson, and Iriele. J.A. 1107. The court sentenced Parker to a sentence of 97 months' imprisonment. J.A. 1131, 1138. Parker filed a timely notice of appeal. J.A. 1143.

II.

Parker contends that the district court committed two evidentiary errors during his trial. First, Parker argues that the district court erred in excluding testimony regarding the IRS's procedures in handling a tax return requesting a million-dollar refund. Second, Parker contends that the district court erred in denying his motion for a mistrial because his former accountant offered allegedly improper lay opinion testimony. We address each in turn.

9

## A.

Parker argues that the district court erred by not allowing him to introduce the evidence of the IRS's internal procedures. He asserted at trial that "[i]f the IRS cannot tell on the face of [a tax return] that it's a false return, how is . . . a layperson, to know a return prepared by a tax preparer is in fact a false return?" J.A. 319–320. We find that the district court did not err in this respect.

We "review[] a district court's evidentiary rulings for abuse of discretion." *United States v. Alvarado*, 840 F.3d 184, 188 (4th Cir. 2016). "A district court abuses its discretion when it (1) acts arbitrarily, as if neither by rule nor discretion, (2) fails to adequately take into account judicially recognized factors constraining its exercise of discretion, or (3) rests its decision on erroneous factual or legal premises." *Id.* at 189 (citing *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993)) (internal quotation marks omitted).

We conclude that the district court did not abuse its discretion in excluding evidence of the IRS's internal procedures. Rule 402 of the Federal Rules of Evidence provides for the admission of all relevant evidence, with certain exceptions. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that the IRS failed to adhere to its internal procedures is of no consequence to determining intent because it is not probative of Parker's intent to defraud the IRS. *United States v. Miller*, 520 F.3d 504, 511 (5th Cir.

2008); *see* Fed. R. Evid. 403. Stated differently, whether the IRS could determine the claim was false is not relevant to whether Parker knew, or was willfully blind to the fact, that the claim was false. Therefore, the district court did not err in excluding the IRS's internal procedures.

B.

Next, we turn to Parker's argument that the district court erred in denying his motion for a mistrial after Newby's opinion statements during cross examination. We assume for the sake of argument that Newby's statements were inappropriate lay opinion statements. "We review a district court's denial of a motion for a mistrial for abuse of discretion." *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009). "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal citations omitted) (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987); *Bruton v. United States*, 391 U.S. 123, 136 (1968)).

Here we find that the district court did not abuse its discretion. It instructed the jury to disregard Newby's inappropriate comments. Parker has not shown that the jury would not be able to do so. Furthermore, Parker invited any error in his former accountant's testimony by asking questions during cross-examination that elicited the

11

disputed response. *See United States v. Neal*, 78 F.3d 901, 904 (4th Cir. 1996) (holding that inflammatory testimony elicited by defense counsel from government witness during cross-examination was invited error); *see also Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011). Parker's questions to his former accountant were part of his trial strategy of attempting to convince the jury that Parker did not know the tax returns were fraudulent because they were prepared by accountants Williams and Jones. *See United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013) (recognizing that miscarriage of justice exception to invited error doctrine does not apply when defendant's actions are based on "sound trial strategy"). We therefore find that the district court did not abuse its discretion.

## III.

Parker argues that the district court erred in declining to instruct the jury on multiple conspiracies and further erred in instructing the jury on willful blindness. We address each argument seriatim.

## A.

Parker advances an argument in his briefs that is slightly different from the one that he made at trial. At trial he argued that there were two conspiracies, one involving Williams, and another separate conspiracy involving Jones and the individuals for which she prepared returns. He now contends that the evidence at trial established *several* different conspiracies in light of Jones preparing tax returns for several different

12

individuals--each pairing representing a separate conspiracy. Appellant's Br. at 19. We find that the district court did not err in its instruction.

We review for abuse of discretion the district court's denial of a proposed jury instruction. *United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015). To show such an abuse, a defendant must establish "that his proposed instructions (1) were correct, (2) were not substantially covered by the charge that the district court actually gave to the jury, and (3) involved some point so important that the failure to give the instructions seriously impaired the defendant's defense." *Id.* (alterations and internal quotation marks omitted).

"[A] district court must issue a 'multiple conspiracies' instruction where the evidence supports a finding that multiple conspiracies existed." *United States v. Stockton*, 349 F.3d 755, 762 (4th Cir. 2003). This instruction is not required, however, "unless the proof at trial demonstrates that [the defendant] w[as] involved *only* in a separate conspiracy *unrelated* to the overall conspiracy charged in the indictment." *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005) (internal citation omitted). Moreover, the failure to give a multiple conspiracies instruction is reversible error only where the defendant establishes substantial prejudice by showing that "the evidence of multiple conspiracies [was] *so* strong in relation to that of a single conspiracy that the jury probably would have acquitted on the conspiracy count had it been given a cautionary multiple-conspiracy instruction." *United States v. Bartko*, 728 F.3d 327, 344 (4th Cir. 2013) (citing *United States v. Tipton*, 90 F.3d 861, 883 (4th Cir. 1993)) (alteration and internal quotation marks omitted).

13

We discern no abuse of discretion here. The evidence amply established that there was only one conspiracy. While Parker notes that Jones prepared tax returns for several individuals, Parker was the connecting figure among all of the conspirators. The evidence established that Parker paid Jones to prepare the returns. Iriele testified that Parker gathered all of her documents and that Parker transmitted the documents to Jones. J.A. 554–558. The evidence supports the conclusion that these transactions were related and not separate conspiracies. Accordingly, we find that the district court did not abuse its discretion in this regard.

B.

Turning to the willful blindness instruction, Parker contends that the Government introduced insufficient evidence to instruct the jury on willful blindness. We review for abuse of discretion a district court's decision to give a particular jury instruction. *United States v. Ali*, 735 F.3d 176, 187 (4th Cir. 2013). "It is well established that where a defendant asserts that he did not have the requisite *mens rea* to meet the elements of the crime but evidence supports an inference of deliberate ignorance, a willful blindness instruction to the jury is appropriate." *Id.* (internal quotation marks omitted). Such an instruction "is appropriate only in rare circumstances." *Id.* Thus, for the instruction to issue, "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *United States v. Hale*, 857 F.3d 158, 168 (4th Cir. 2017) (quoting *GlobalTech*

14

*Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 (2011)). If the district court erred in issuing the instruction, the error is harmless where "there is sufficient evidence in the record of actual knowledge on the defendant's part." *United States v. Lighty*, 616 F.3d 321, 378–79 (4th Cir. 2010).

We discern no abuse of discretion in instructing the jury on willful blindness. Parker contended that he acted in good faith, putting his *mens rea* at issue. Yet the evidence showed that Parker had a subjective belief that the returns were fraudulent--he lied to the IRS agents investigating Williams and he received and passed on advice that his coconspirators should attempt to hide their million-dollar refund. *See Hale*, 857 F.3d at 169 (finding subjective knowledge in part when defendant attempted to warn individual about police investigation). Additionally, Parker had previously consulted with an accountant who advised him that he owed the IRS money for 2007 and failed to question Jones about why his coconspirators would need to hide their refund. *See United States v. Jinwright*, 683 F.3d 471, 479 (4th Cir. 2012) (finding defendants avoided learning of tax liability when "auditors . . . advised the defendants that they were underreporting their income, but defendants never raised these concerns with their personal CPA, who could easily have explained the law").

Even if the district court had erred in this respect, the error was nonetheless harmless because there is sufficient evidence in the record for a jury to arrive at the conclusion that Parker had actual knowledge. Parker knew how much income he had earned and that the information in the OIDs was false. Additionally, he instructed others

15

to move all of their assets out of their names when the IRS started to catch up to their scheme. Therefore, there was sufficient evidence of actual knowledge to render harmless any error in instructing the jury on willful blindness.

IV.

Parker contends that the district court infringed his due process right to testify by warning him that if he committed perjury he could receive an enhancement for obstruction of justice under the Guidelines. We disagree.

Because Parker did not object to the district court's warning about the possible consequences of committing perjury, we review this issue for plain error. *United States v. Catone*, 769 F.3d 866, 871 (4th Cir. 2014). Thus, to succeed on his claim, Parker "must show (1) that the [district] court erred, (2) that the error is clear and obvious, and (3) that the error affected his substantial rights, meaning that it affected the outcome of the district court proceedings." *Id.* (internal quotation marks omitted). If Parker meets this burden, "we retain discretion whether to recognize the error and will deny relief unless the district court's error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted).

While a defendant has a right to testify at his trial, the "right to testify does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). The district court simply provided Parker with information on the potential consequences of testifying--information necessary for him to make an informed decision about whether to testify. The district court's comments may have contributed to Parker's decision not to testify but do not create a constitutional infirmity.

16

Although we have not addressed the issue in a published opinion, two of our sister circuits have concluded that a district court does not err in warning the defendant about the potential obstruction of justice sentencing enhancement in advising a defendant about his right to testify. *See United States v. Johnson*, 627 F.3d 578, 582 (6th Cir. 2010); *United States v. Padron*, 938 F.2d 29, 30 (2d Cir. 1991) (per curiam). We agree and conclude that Parker fails to demonstrate that the district court plainly erred. *See United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002) ("In the absence of [Supreme Court or Fourth Circuit] authority, decisions by other circuit courts of appeals are pertinent to the question of whether an error is plain." (internal quotation marks omitted)).

V.

Finally, Parker contends that the district court erred in applying a 4-level leadership enhancement. "We accord due deference to a district court's application of the [S]entencing [G]uidelines." *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013). A defendant qualifies for a 4-level enhancement to his offense level if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1(a) (2015). The district court's determination that a defendant was an organizer or leader is a factual matter reviewed for clear error. *United States v. Thorson*, 633 F.3d 312, 317 (4th Cir. 2011). Factors distinguishing a leadership or organization role from lesser roles include:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1 cmt. n.4. The enhancement "is appropriate where the evidence demonstrates that the defendant controlled the activities of other participants or exercised management responsibility." *United States v. Llamas*, 599 F.3d 381, 390 (4th Cir. 2010) (internal quotation marks omitted) (quoting *United States v. Bartley*, 230 F.3d 667, 674 (4th Cir. 2000)).

We conclude that the district court did not clearly err in applying the leadership enhancement. Parker recruited several individuals to join his tax fraud scheme. While Parker contends that Jones was the leader, there can be more than one leader in a criminal activity. USSG § 3B1.1 cmt. n.4. Additionally, Parker received a larger share of his coconspirators' million-dollar refund than did Jones. Moreover, Parker walked some coconspirators through the process of filing their fraudulent return, even personally mailing their return to the IRS. *See Bartley, 230 F.3d* at 673 ("[T]he enhancement is justified if the defendant managed or supervised the activities of at least one other person in a scheme that involved five or more participants."). Thus, the leadership enhancement appears to have been appropriate.

## VI.

We dispense with oral argument at the parties' request.  Because we conclude that the district court did not err or abuse its discretion, Parker's conviction and sentence are

*AFFIRMED.*